O

# United States District Court
# Central District of California

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, | Case № 2:15-cv-02812-ODW(CWx) |
| Plaintiff, | |
| v. | **CLAIM CONSTRUCTION ORDER** |
| ROMEO & JULIETTE, INC.; THOMAS ROMEO; and DOES 1-10, inclusive, | **U.S. PATENT NO. D599,999** **U.S. PATENT NO. D582,650** **U.S. PATENT NO. D616,189** **U.S. PATENT NO. D642,781** |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Deckers Outdoor Corporation designs and markets "UGG" brand boots, and owns several design patents related to those boots.  (Compl. ¶¶ 4, 9–10, ECF No. 1.)  Defendant Romeo & Juliette, Inc., owned by Defendant Thomas Romeo, also manufactures, designs, and sells footwear under the brand names BearPaw and Attix.  (*Id.* ¶¶ 13, 14.)  Deckers alleges that Defendants' boots infringe on three of its design patents: (1) U.S. Patent No. D599,999 ("the '999 patent"); (2) U.S. Patent No. D616,189 ("the '189 patent"); and (3) U.S. Patent No. D582,650 ("the '650 patent").  (*Id.* ¶¶ 19–51.)  Deckers also previously asserted a claim against Defendants for infringement of U.S. Patent No. D642,781 ("the '781 patent").  (*Id.* ¶¶ 52–62.)  While the Court has dismissed that claim with prejudice, Defendants' counterclaim for non-infringement of that same patent remains.  (Order, ECF No. 51; Countercl. ¶¶ 32–34,

ECF No. 16.)

Defendants contend that the '999 patent, the '650 patent, and the '189 patent are indefinite and therefore invalid, and that certain features depicted in the drawings for all four patents are non-patentable functional elements.   (Joint Claim Constr. & Prehr'g Stmt. at 3–18, ECF No. 36; *see generally* Defs.' Opp'n Claim Constr. Br., ECF No. 42.)   Deckers argues that none of the patents are indefinite, and that it is unnecessary to adopt a written construction describing the ornamental versus functional elements of the designs.   (*See generally* Pl.'s Claim Constr. Reply Br., ECF No. 47.)   It also argues that the Court should defer to a claim construction order issued by Judge James Selna of this district concerning the '999 patent and the '189 patent. (*Id.*)   Lastly, Deckers argues that Defendants' counterclaim for non-infringement of the '781 patent is moot, and thus construing that patent is unnecessary.   (*Id.*; Claim Constr. Hr'g Tr. at 6–8; Pl.'s Suppl. Claim Constr. Br. at 6, ECF No. 6.)

On October 7, 2016, the Court held a claim construction hearing to resolve these issues.   (ECF No. 53.)   For the reasons discussed below, the Court concludes as follows: (1) the Court need not defer to Judge Selna's prior claim construction order concerning the '999 patent and the '189 patent; (2) Defendants' counterclaim for non-infringement of the '781 patent is not moot; (3) none of the patents are invalid for indefiniteness; and (4) the Court adopts **DECKERS**'s construction for the four patents.

## II.   DISCUSSION

### A.   Prior Claim Construction

In 2014, Judge Selna issued a claim construction order regarding both the '999 patent and the '189 patent.   (Order re Claim Construction, *Deckers Outdoor Corp. v. Rue Services Corp.*, No. CV13-06303-JVS (VBKx) (C.D. Cal. Aug. 29, 2014), ECF No. 74.)   There, like here, Deckers sued several defendants for selling footwear that allegedly infringed on these two patents.   The defendants proposed lengthy written constructions for each patent describing in detail each boot's design.   (*Id.* at 3–4.)

1   Judge Selna declined to adopt a written construction for either, holding that "the
2   depictions [in the patent drawings] speak for themselves." (*Id.* at 4.)  Judge Selna also
3   held that there were "genuine factual disputes regarding the degree to which certain
4   features of the D999 and D189 Patents are ornamental or functional" that a jury
5   should resolve. (*Id.* at 5.)  Finally, Judge Selna declined to consider the issue of
6   invalidity for indefiniteness. (*Id.*)

7        Several district courts have held that where a prior court has construed a patent
8   claim, a district court faced with the same construction issues should—but does not
9   have to—follow the prior construction. *Rambus Inc. v. Hynix Semiconductor Inc.*,
10  569 F. Supp. 2d 946, 965 (N.D. Cal. 2008); *see also Sears Petroleum & Transp. Corp.
11  v. Archer Daniels Midland Co.*, No. CIVA 503CV-1120 DEP, 2007 WL 2156251, at
12  *8 (N.D.N.Y. July 24, 2007) (holding that "considerable deference should be given"
13  to prior claim constructions unless the parties make new arguments not considered by
14  the prior court).  Deferring to prior constructions tends to promote intrajurisdictional
15  uniformity in claim interpretation. *See Markman v. Westview Instruments, Inc.*, 517
16  U.S. 370, 391 (1996) ("[T]reating interpretive issues as purely legal will promote
17  (though it will not guarantee) intrajurisdictional certainty through the application of
18  *stare decisis* on those questions . . . ."); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S.
19  Ct. 831, 851 (2015) (Thomas, J., dissenting) ("Uniformity is a critical feature of our
20  patent system because the limits of a patent must be known for the protection of the
21  patentee, the encouragement of the inventive genius of others and the assurance that
22  the subject of the patent will be dedicated ultimately to the public." (internal brackets
23  and quotation marks omitted)).

24       Here, however, there is no need to defer to Judge Selna's ruling.  The order
25  expressly declined to address invalidity for indefiniteness, and thus it has no relevance
26  to the indefiniteness inquiry in this case.  Moreover, Judge Selna never determined
27  which design features were functional and which were ornamental—opting instead to
28  leave that issue to the jury—and thus there is no construction to which this Court can

1   even defer on that issue.[1]   Thus, Judge Selna's order does not impact this claim
2   construction.

3   **B.    Defendants' Counterclaim for Non-Infringement of '781 Patent**

4         Before the claim construction hearing, Deckers moved to voluntarily dismiss
5   without prejudice its claim against Defendants for infringement of the '781 patent.
6   (ECF No. 41.)   Defendants opposed, arguing that the dismissal should be with
7   prejudice and that the Court should award fees and costs against Deckers.  (ECF No.
8   48.)  The Court dismissed Deckers' claim with prejudice, but declined to award fees
9   and costs against Deckers.  (ECF No. 51.)  Deckers argues that the dismissal renders
10  Defendants' counterclaim for non-infringement of the same patent moot—particularly
11  as Defendants are no longer even selling the allegedly infringing boot—and thus the
12  Court cannot construe the claim.  (Pl.'s Suppl. Claim Constr. Br. at 6.)  Defendants
13  argue that neither the dismissal nor their decision to stop selling the allegedly
14  infringing boot satisfies the high bar for establishing mootness based on voluntary
15  cessation, and hence its non-infringement counterclaim is not moot.  (Opp'n at 10–12,
16  ECF No. 48.)  The Court agrees with Defendants.

17        "[A] case becomes moot when the issues presented are no longer 'live' or the
18  parties lack a legally cognizable interest in the outcome."  *Murphy v. Hunt*, 455 U.S.
19  478, 481 (1982) (internal quotation marks omitted).  The Supreme Court "ha[s]
20  recognized, however, that a defendant cannot automatically moot a case simply by
21  ending its unlawful conduct once sued.  Otherwise, a defendant could engage in
22  unlawful conduct, stop when sued to have the case declared moot, then pick up where
23  he left off, repeating this cycle until he achieves all his unlawful ends."  *Already, LLC*

24  _____

25        [1] To the extent Deckers argues that the Court should defer to Judge Selna's legal conclusion that
26  a jury rather than the court must resolve factual disputes concerning functional versus ornamental
    design elements, the Court disagrees.  *Markman*'s concern with intrajurisdictional uniformity
27  extends only to uniform interpretations of particular patent claims.  Uniformity in claim construction
    jurisprudence, on the other hand, is achieved by applying Federal Circuit precedent, not by deferring
28  to a particular judge's legal conclusions.

*v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (citations omitted).  Accordingly, voluntary cessation moots a claim only where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted).  Where, as here, a plaintiff asserts that a counterclaim is moot because the plaintiff voluntarily dismissed its direct claim, the plaintiff bears the burden of showing that "it 'could not reasonably be expected' to resume its enforcement efforts against" the defendant.  *Already, LLC*, 133 S. Ct. at 727.

Deckers has not met that burden.  As Defendants pointed out during oral argument, Deckers requested that the Court dismiss its infringement claim *without* prejudice.  (Claim Constr. Hr'g Tr. at 5–6.)  Thus, Deckers could take an appeal and seek reversal of the Court's decision to dismiss the claim *with* prejudice.  If Deckers prevailed on that appeal and the claim was instead dismissed without prejudice, Deckers would be free to refile the claim in future.  This would be so even though Defendants have ceased selling the allegedly infringing boot, because Deckers could still reassert the claim for prior instances of infringement.  Accordingly, the dismissal with prejudice of Deckers' infringement claim does not make "absolutely clear" that Deckers would not resume enforcement of the '781 patent against Defendants.  As a result, Defendants' counterclaim for non-infringement is not moot.

## C.   Indefiniteness

### 1.   Legal Standard

"Indefiniteness is a matter of claim construction."  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008).  Before 2014, the Federal Circuit held that a patent was invalid for indefiniteness only if its claims were "not amenable to construction" or were "insolubly ambiguous."  *See, e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).  However, in *Nautilus, Inc. v. Biosig Instruments, Inc.*, the Supreme Court abrogated this test, holding instead that "a

patent is invalid for indefiniteness if its claims . . . fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." 134 S. Ct. 2120, 2124 (2014). "The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Id.* The burden is on the party asserting invalidity to show it by clear and convincing evidence. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 97 (2011).

It is unclear how much of the Federal Circuit's indefiniteness jurisprudence survives *Nautilus*. *Nautilus* suggests that the problem with the Federal Circuit's test was simply that the words "not amenable to construction" and "insolubly ambiguous" were "more amorphous than the statutory definiteness requirement allows," 134 S. Ct. at 2131, and that "[t]he Federal Circuit's fuller explications of the term 'insolubly ambiguous' . . . may come closer to tracking the statutory prescription," *id.* at 2130. Thus, *Nautilus* may have amounted to little more than an admonition not to use the words "not amenable to construction" and "insolubly ambiguous." *See Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) (noting on remand from *Nautilus* that the Supreme Court's holding "does not render all of the prior Federal Circuit and district court cases inapplicable").

Here, neither party proposes a new post-*Nautilus* standard for indefiniteness in design patents, although Defendants suggest that the standard is necessarily less stringent than it was pre-*Nautilus*. The Federal Circuit has not yet applied *Nautilus* to design patents, and while one district court has done so, it nevertheless relied on pre-*Nautilus* cases without further explanation. *Weber-Stephen Prod. LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 9304343, at *17 (N.D. Ill. Dec. 22, 2015) ("[F]or a design patent to be invalidated for indefiniteness, 'errors and inconsistencies in the patent drawings must be material and of such magnitude that the overall appearance of the design is unclear.'" (quoting *Times Three Clothier, LLC v. Spanx, Inc.*, No. 13 CIV. 2157 DLC, 2014 WL 1688130, at *7 (S.D.N.Y. Apr. 29, 2014))).[2]

---

[2] While another district court applied *Nautilus* to invalidate a design patent based on

The Court concludes that *Nautilus* does not alter the focus of the indefiniteness inquiry for design patents on the overall appearance of the design rather than any one individual feature.  *See, e.g., OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("It is the appearance of a design as a whole which is controlling in determining infringement.  There can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar."); *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321 (Fed. Cir. 2016) ("[D]esign patents protect the overall ornamentation of a design, not an aggregation of separable elements.").  However, the benchmark of the *Times Three Clothier* test—that the inconsistencies must make the overall appearance "unclear," 2014 WL 1688130, at *7—is the type of language that the *Nautilus* Court considered unduly "amorphous," 134 S. Ct. at 2131.  The Court therefore adopts a modified version of the *Times Three Clothier* test: a design patent is invalid for indefiniteness if the errors and inconsistencies in the patent drawings are of such magnitude that the drawings, taken as a whole, fail to inform, with reasonable certainty, those skilled in the art about the overall appearance of the design.

### 2.    The '999 Patent

Defendants argue that some of the drawings in this patent depict the boot with a v-shaped notch on the top inward-facing side of the boot, whereas other drawings do not, as illustrated below.  (Opp'n at 9–15.)  Defendants argue that this renders the patent invalid for indefiniteness.  (*Id.*)

---

indefiniteness, *Eclectic Prod., Inc. v. Painters Prod., Inc.*, No. 6:13-CV-02181-AA, 2015 WL 930045, at *3 (D. Or. Mar. 2, 2015), that was based on inconsistencies between the claim drawings and the claim *language*, rather than inconsistencies between drawings.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  Defendants' argument is unpersuasive.  There is a definite notch in Fig. 1 and

17 Fig. 3.  The straight line in Fig. 3 appears to represent the opposite side of the boot; it

18 does not, as Defendants contend, depict one side with *both* a v-shaped notch and no

19 notch.  While Fig. 2 and Fig. 6 appear to omit a notch, the omission is not material.

20 Due to the perspective and the foamy material lining the inside of the boot, the notch

21 would be mostly obscured from those perspectives.  Moreover, it seems apparent that

22 a reasonable boot designer, in deciding whether the claimed design includes a notch,

23 would look to the drawings that provide the clearer—not the more obscured—view of

24 that part of the boot.  *See Antonious v. Spalding & Evenflo Cos., Inc.*, 217 F.3d 849

25 (Fed. Cir. 1999) (unpublished disposition) ("We agree with the district court that

26 Figure 4 of each patent appears to show a constant-thickness weight bar. . . . However,

27 Figures 2 and 3 plainly show a tapered weight bar.  We conclude that a person of skill

28 in the art would primarily look to Figures 2 and 3 to determine the shape of the weight

bar, and any associated discrepancies in Figure 4 would not be sufficient to preclude such a person from gaining an overall understanding of the total substance of the designs."). Given these considerations, the Court is not "clearly" convinced that these discrepancies are of such magnitude that a boot designer and manufacturer could not determine with reasonable certainty the overall appearance of the boot.

### 3. The '189 Patent

Defendants argue that the '189 patent is indefinite for the same reason as the '999 Patent—i.e., some drawings depict the boot with a notch on the top right side of the boot whereas others do not, as illustrated below. (Opp'n at 15–16.)





While there is a discernable notch in Fig. 3, it is substantially less pronounced

than the notch depicted in the '999 patent.  Moreover, close examination of Fig. 2 does in fact depict what appears to be a slight downward-facing notch on the far side of the boot.  Finally, the material lining the inside of the boot appears particularly fluffy and also appears to spill over onto the top and outside of the boot precisely where the v-notch would be.  Thus, one would not expect Fig. 1, Fig. 2, or Fig. 6 to clearly depict a v-notch anyway.  Accordingly, the Court concludes that a boot designer could determine with reasonable certainty the overall appearance of the claimed design from the drawings.  *See Antonious*, 217 F.3d 849.

### 4.      The '650 Patent

Defendants argue that this patent is indefinite because the hatch-pattern designs on the side and top of the boot are inconsistent in each picture, and because it is unclear what the hatch-pattern represents (i.e., texture, color, etc.), as illustrated below.  (Opp'n at 16–18.)






The Court agrees with Deckers that this patent, like all design patents, simply claims an appearance; it does not claim the material that the boot, or any portion of the boot, is made from. *See OddzOn Prod., Inc.*, 122 F.3d at 1405 (infringement is established when it is determined that "the patented design as a whole is substantially similar in *appearance* to the accused design" (emphasis added)). Thus, the fact that it is unclear whether the hatch pattern represents texture, color, or something else, is not important. If an infringer replicated this pattern on a boot, it would not matter if it used color or texture to do so. Thus, this ambiguity does not render the claim indefinite.

As to the pattern itself, there is no appreciable difference in the patterns between the various drawings within each embodiment.[3] While Fig. 6 appears to depict hatch drawings on the top lip of the boot that do not appear in the other drawings (e.g., Fig. 1), this alone does not render the overall appearance of the claimed design uncertain.

For the foregoing reasons, the Court concludes that the '999 patent, the '650 patent, and the '189 patent are not invalid for indefiniteness.

/ / /

---

[3] The Court notes that Figs. 1–14 shows one embodiment of the design, while Figs. 15–28 shows a different embodiment.

**D.    Functional vs. Ornamental**

    **1.    Legal Standard**

"A design patent only protects the novel, ornamental features of the patented design," not the functional aspects of the design. *OddzOn Prod., Inc.*, 122 F.3d at 1405. An element of the claimed design is functional if its appearance is "dictated by the use or purpose of the article." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prod., Inc.*, 122 F.3d at 1405. In doing so, however, the Court cannot "entirely eliminate a structural element from the claimed ornamental design," for "design patents protect the overall ornamentation of a design, not an aggregation of separable elements." *Sport Dimension, Inc.*, 820 F.3d at 1321. Moreover, not only is "a design is better represented by an illustration," "the court should recognize the risks entailed in [providing a written construction of a design patent], such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc). Thus, "the court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful." *Id.* at 679.

To help determine whether any particular feature of a drawing is functional or ornamental, courts may also consider the following factors:

> [W]hether the protected design represents the best design; whether alternative designs would adversely affect the utility of the specified article; whether there are any concomitant utility patents; whether the advertising touts particular features of the design as having specific utility; and whether there are any elements in the design or an overall

1    appearance clearly not dictated by function.

2    *Sport Dimension, Inc.*, 820 F.3d at 1322.

3    **2.    The '999 Patent**

4    Defendants propose the following construction for the '999 patent:



11    "The ornamental design for a portion of a footwear upper, as shown and described in

12    FIGURES 1-7, excluding portions shown in broken lines.  Functional features not

13    forming part of the claimed design include the following:

14    • A cord that is part of a lateral side button-and-loop closure system (A);

15    • A toggle securing patch attaching the loop to the side of the boot, although the

16    specific shape and size of the patch is ornamental and forms part of the claim

17    (B);

18    • Seams used to join two or more material pieces of the footwear upper, although

19    the specific placement, contour and stitch details is ornamental and forms part

20    of the claim (C)."

21    (Defs.' Suppl. Claim Constr. Br. at 3–4, ECF No. 58.)  Deckers proposes a much more

22    minimalist construction: "The ornamental design for a portion of a footwear upper as

23    shown in the figures of the D599,999 Patent (FIGS. 1 – 7), excluding portions shown

24    in broken lines."  (Pl.'s Suppl. Claim Constr. Br. at 1, ECF No. 59.)

25    Defendants argue that the side-fastening loop system is functional because a

26    boot comprised of two unconnected flaps always requires a mechanism to hold the

27    flaps together—although they concede the chosen loop system may contain certain

28    ornamental aspects.  (Joint Claim Constr. & Prehr'g Stmt. at 9; Opp'n at 19–20; Claim

Constr. Hr'g Tr. at 23.)  While the Court agrees that the mere existence of a closure system is functional, the choice to use a single-loop system—as opposed to a zipper, laces, a multiple-loop system, snap-on buttons, Velcro, etc.—is ornamental.  At least some of these other mechanisms would fasten the two flaps together far more securely, and thus the chosen loop system is certainly not "dictated" by functional considerations.  *See Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) ("[I]f other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (noting in the context of a design patent for a shoe: "That elements of the '081 design, such as the delta wing or the side mesh, also provide support for the foot does not mean that the specific design of each element . . . is dictated by primarily functional considerations.").  Accordingly, the Court concludes that the loop system is ornamental.[4]

Defendants also argue that the boot seams are functional for much the same reasons: stitching is always necessary to hold adjoining boot material together, even though the design and appearance of the stitching (e.g., location, prominence, stitch detail, etc.) is ornamental.  (Joint Claim Constr. & Prehr'g Stmt. at 10; Opp'n at 20; Claim Constr. Hr'g Tr. at 23–24.)  The Court finds Defendants' distinction between the ornamental and functional aspects of the seams to be obvious, and thus their construction rather unhelpful.  A reasonable factfinder would not consider the bare use of seams to hold a shoe together to be a unique ornamental aspect of Deckers' boot design, any more than they would consider the boot's foot-like shape to be so.  Any advantage gained from providing such a construction would be offset by the risk that the jury would erroneously exclude the seams entirely from the design, or that it

---

[4] Moreover, even aside from this, Defendants' construction appears to exclude the loop entirely from the claimed design, which is contrary to the Federal Circuit's decision in *Sport Dimension*, 820 F.3d at 1321.

would suggest to them that the drawings were simply an aggregation of separable elements rather than one overall design.   A more general instruction concerning the distinction between functional and ornamental elements will suffice here.

Accordingly, the Court adopts **DECKERS**'s construction for the '999 patent.

### 3.    The '189 Patent

Defendants proposed construction for the '189 patent is similar to that of the '999 patent:



"The ornamental design for a portion of a footwear upper, as shown and described in FIGURES 1-6, excluding portions shown in broken lines.   Functional features not forming part of the claimed design include the following:

- A cord that is part of each lateral side button-and-loop closure system (A);
- A toggle securing patch attaching each loop to the side of the boot, although the specific shape and size of the patch is ornamental and forms part of the claim (B);
- A button for each lateral side button-and-loop closure, although the specific shape and size of the button is ornamental and forms part of the claim (C);
- Seams used to join two or more material pieces of the footwear upper, although the specific placement, contour and stitch details is ornamental and forms part of the claim (D)."

(Defs.' Suppl. Claim Constr. Br. at 4.)   Deckers proposes the following construction: "The ornamental design for a portion of a footwear upper as shown in the figures of the D616,189 Patent (FIGS. 1 – 6), excluding portions shown in broken lines."   (Pl.'s

Suppl. Claim Constr. Br. at 2.)  The elements that Defendants contend are functional are virtually identical to those in the '999 patent.  For the same reasons that the Court declined to adopt Defendants' construction for the '999 patent, the Court also declines to adopt their construction for the '189 patent.  Instead, the Court adopts **DECKERS**'s construction for the '189 patent.

### 4.    The '650 Patent

Defendants propose the following construction for the '650 patent:



"The ornamental design for a portion of a footwear upper, as shown and described in FIGURES 1-28, excluding portions shown in broken lines.  Functional features not forming part of the claimed design include the following:

- An entrance to the boot structure, although the specific location of the entrance is ornamental and forms part of the claim (A);

- A seam cut to the entrance to the boot structure, although the specific location, size and configuration of the seam cut is ornamental and forms part of the claim (B);

- Seams used to join two or more material pieces of the footwear upper, although the specific placement, contour and stitch details is ornamental and forms part of the claim (C)."

(Defs.' Suppl. Claim Constr. Br. at 5.)  Deckers essentially agrees with Defendants regarding the functional versus ornamental nature of these features, but argues again that the distinctions are obvious and thus not necessary to point out in a written

16

construction.  (Pl.'s Suppl. Claim Constr. Br. at 6.)  Deckers proposes the following construction: "The ornamental design for a portion of a footwear upper as shown in the figures of the D582,650 Patent (FIGS. 1 – 28), excluding portions shown in broken lines."  (*Id.* at 2.)  The Court agrees with Deckers for the same reasons as previously described.  The functional aspects of these features are obvious, and thus a construction that parses out the ornamental from the functional aspects of these features is unnecessary and potentially draws focus from the overall appearance of the design.  Thus, the Court adopts **DECKERS**'s construction.

### 5.    The '781 Patent

Finally, Defendants propose the following construction for the '781 patent:



FIG. 5                                                 FIG. 3

"The ornamental design for a portion of a footwear upper, as shown and described in FIGURES 1-7, excluding portions shown in broken lines.  Functional features not forming part of the claimed design include the following:

- An outer boot covering, although the specific size, cut and how far it sits on the boot toe is ornamental and forms part of the claim (A);

- An identification plate, although the specific location, size and configuration of the identification plate is ornamental and forms part of the claim (B);

- A notch at the rear of the boot structure to provide visibility to the identification plate, although the specific size and shape of the notch is ornamental and forms part of the claim (C)."

(Def.'s Suppl. Claim Constr. Br. at 5.)  Deckers counters that the outer boot covering, the identification plate, and the rear notch are ornamental *in toto*.  (Pl.'s Suppl. Claim Constr. Br. at 6–7.)  Thus, Deckers proposes the following construction: "The ornamental design for a portion of a footwear upper as shown in the figures of the D642,781 Patent (FIGS. 1 – 7), excluding portions shown in broken lines."  (*Id.* at 2.)

The Court agrees that the outer boot covering is ornamental, not functional.  Indeed, Defendants do not even say what function it serves.[5]  Moreover, the fact that the other three boot designs do not have an outer covering highlights the ornamental nature of the feature.  The Court also concludes that the identification plate—which, according to Defendants, is where the boot's brand identification is placed—is ornamental.  Deckers disagrees that this feature is even properly characterized as an "identification plate," but regardless, it certainly serves no functional purpose germane to that of a boot.[6]  Rather, it simply identifies the product to the public in a visually pleasing manner.  And, again, the fact that none of the other boot designs have identification plates further highlights the ornamental nature of the element.  Lastly, while the notch at the rear of the boot does provide visibility to the identification plate, the Court concludes that it too is ornamental.  Having a notch is not the only way to provide visibility to the plate; for example, Deckers could have cut the outside cover higher instead.  More significantly, though, the notch does not help the shoe function *as a shoe*.  Rather, it is simply one way to give visibility to the identification plate—an aspect that is also purely ornamental.  Thus, the Court adopts **DECKERS**'s construction.

---

[5] Defendants previously argued that the existence of upper boot material surrounding the area above the ankle was functional because all boots have *some* sort of material in that area—indeed, that is what makes it a boot.  (Joint Claim Constr. & Prehr'g Stmt. at 16.)  But this appears to be distinct from Defendants' new argument that the fluffy, outer material is the functional feature.

[6] Defendants argue that it is functional because its sole purpose is to "inform the public as to the particular brand."  (Joint Claim Constr. and Prehr'g Stmt. at 16.)  However, informing the public of the shoe's brand does not help the shoe function *as a shoe*.  It is thus not "functional" in any relevant sense.

### III.   CONCLUSION

For the foregoing reasons, the Court concludes as follows: (1) the Court need not defer to Judge Selna's ruling concerning the '999 patent and the '189 patent; (2) Defendants' counterclaim for non-infringement of the '781 patent is not moot; (3) none of the patents are invalid for indefiniteness; and (4) the Court adopts **DECKERS**'s construction for all four patents.

**IT IS SO ORDERED.**

December 1, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**