**O**

# United States District Court
# Central District of California

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, | Case № 2:15-cv-02812-ODW (PLAx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [101]** |
| ROMEO & JULIETTE, INC.; THOMAS ROMEO; and DOES 1-10, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiff Deckers Outdoor Corporation designs and sells "UGG" brand boots and owns several design patents related to those boots. Defendant Romeo & Juliette, Inc., owned by Defendant Thomas Romeo, also designs and sells boots under the brand names BearPaw and Attix. Deckers alleges that several of Defendants' boot styles infringe on three of its design patents: (1) U.S. Patent No. D599,999 ("the '999 patent"); (2) U.S. Patent No. D616,189 ("the '189 patent"); and (3) U.S. Patent No. D582,650 ("the '650 patent"). Defendants now move for summary judgment on their affirmative defenses of laches and equitable estoppel with respect to the '650 patent and '999 patent. The Court concludes that equitable estoppel indisputably bars assertion of the '650 patent, but that a reasonable jury could find against Defendants

on both laches and equitable estoppel with respect to the '999 patent. Accordingly, the Court **GRANTS** Defendants' Motion with respect to the '650 patent and **DENIES** the Motion with respect to the '999 patent.[1] (ECF No. 101.)

## II. BACKGROUND

As previously noted, the two patents relevant to this Motion are the '999 patent and the '650 patent. (Statement of Uncontroverted Facts ("SUF") 4, 6, 8, ECF No. 110.) The '999 patent claims the boot design embodied in Deckers' Bailey Button boot, and the '650 patent claims the design embodied in its Classic Cardy boot. (SUF 52.) Deckers alleges that Defendants' Victorian boot, Abigail Youth boot, Abigail Toddler boot, Diva boot, and Elena boot[2] infringe on the '999 patent, and that Defendants' Knit Tall boot infringes on the '650 patent. (*See* Compl. ¶¶ 22, 44, ECF No. 1; Opp'n at 1 n.2, ECF No. 109.)

Deckers began selling its Classic Cardy boot in Spring 2008. (SUF 53.) In late 2008, Deckers sued fifteen defendants in a single action, alleging that each of them designed boots that infringed on the '650 patent. (SUF 13, 14.) In March 2009, Deckers sent a cease-and-desist letter to Defendants, claiming that Defendants' Knit Tall boot infringed on the '650 patent. (SUF 17.) In the letter, Deckers asserted that it was "committed to aggressively protecting its [intellectual property] rights" and enclosed a copy of the 2008 lawsuit Deckers had filed against those fifteen defendants. (SUF 17–18.) A month later, Defendants offered to cease production of the Knit Tall boot and to pay Deckers $1,500, which was based on Defendants' sale of 240 Knit Tall boots to date. (SUF 21; Alaniz Decl., Ex. 7, ECF No. 103-4.) Deckers never responded to this offer (SUF 23), and there is no indication that Defendants ever ceased production of the boot.

In November 2010, Deckers filed a lawsuit against Defendants in which it asserted trade dress infringement and dilution claims. (SUF 27.) Deckers alleged that

---

[1] After considering the papers submitted by the parties, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] Defendants generally describe these as their "one-button boots."

2

Defendants' Knit Tall boot infringed on the trade dress embodied in Deckers' Classic Cardy boot. (*See* SUF 28.) At no time did Deckers assert any patent infringement claims in that lawsuit. (SUF 34.) In February 2012, the parties settled the case. (SUF 35.) As part of the settlement, Defendants agreed to make certain changes to the design of the Knit Tall boot. (Bereda Decl., Ex. 3, ECF Nos. 111, 112.) In exchange, Deckers agreed that once Defendants made those changes, any similarities between the Knit Tall boot and the Classic Cardy boot would not be deemed to infringe on Deckers' trade dress rights. (*Id.*) And while the agreement appeared to contemplate the continued sale of the Knit Tall boot, the agreement also stated that "[n]othing herein shall be deemed a wavier of any intellectual property claims not asserted in the Litigation." (*Id.*)

In April 2015, Deckers filed the instant action, alleging (among other things) that Defendants' Knit Tall boot infringes on the '650 patent and that Defendants' one-button boots infringe on the '999 patent. (ECF No. 1.) Between 2009 and the filing of this lawsuit, Deckers sold nearly 750,000 knit boots and 700,000 one-button boots. (SUF 48, 51.) Defendants' Motion for Summary Judgment concerning these two infringement claims is now before the Court for decision.

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d

730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378.

## IV. DISCUSSION

Defendants argue that Deckers' infringement claim concerning the '999 patent and the '650 patent are barred by laches and equitable estoppel. (*See generally* ECF No. 101.) The Court concludes that the '650 patent is barred by equitable estoppel and thus does not address laches with respect to that patent. However, the Court concludes that genuine issues of fact remain preclude summary judgment on both equitable estoppel and laches with respect to the '999 patent.

### A. The '650 Patent

Defendants argue that Deckers' failure to assert the '650 patent for six years after sending the cease-and-desist letter led Defendants to believe that Deckers had abandoned the claim. (Mot. at 18–22, ECF No. 101.) Defendants contend that it made substantial investments in marketing and selling their allegedly infringing Knit Tall boot in reliance that on Deckers' misleading inaction, and thus it would be inequitable to permit Deckers to proceed with its infringement claims now. (*Id.* at 22–23.) The Court agrees.

Equitable estoppel is a complete defense to a patent infringement claim. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017). To establish the defense, the defendant must prove each of the following elements: (1) "[t]he patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer"; (2) "[t]he alleged infringer relies on

that conduct"; (3) "[d]ue to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Id.*

### 1. Misleading Conduct

This element is satisfied where "[t]he alleged infringer . . . know[s] or [is] reasonably . . . able to infer that the patentee has known of the former's activities for some time," and the patentee engages in conduct that "support[s] an inference that the patentee did not intend to press an infringement claim against the alleged infringer." *A.C. Aukerman Co.*, 960 F.2d at 1042. "Conduct" by the patentee that is sufficient to trigger an equitable estoppel defense "may include specific statements, action, inaction, or silence where there was an obligation to speak." *Id.* at 1028. Silence or inaction alone is insufficient to give rise to equitable estoppel; rather, silence or inaction "must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.* at 1043–44. "In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." *Id.* at 1042; *see also, e.g., Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 482 (7th Cir. 1975) (patentee's conduct was misleading where it issued a cease and desist letter threatening immediate action but failed to take any action for five years).

Here, there is no question that Deckers' conduct was misleading—and egregiously so. Deckers' March 2009 letter stated that it was aware of Defendants' Knit Tall boot style and the boot's ostensible similarity to the '650 design patent, and that Deckers intended to vigorously enforce its patent rights. Yet despite an ongoing and litigious relationship between Deckers and Defendants, Deckers failed to assert any such claims for the next six years. First, Deckers never added Defendants to the 2008 lawsuit it filed against fifteen defendants for infringing the '650 patent. Second, despite suing Defendants for trade dress infringement and dilution with respect to the Knit Tall boot, Deckers did not assert any patent infringement claims as to that very

same boot. In fact, the settlement agreement arising from that lawsuit clearly contemplated Defendants continuing to manufacture and sell the Knit Tall boot (albeit with slight modifications). Finally, a further three years of silence passed before Deckers filed this action. Based on these facts, any reasonable factfinder would conclude that Deckers had led Defendants to believe that it no longer intended to assert the '650 patent.

Deckers argues that its conduct was not misleading because it expressly carved out unasserted intellectual property claims from the release in the settlement agreement—which would include unasserted claims for patent infringement.[3] Under the circumstances, however, this is insufficient to raise a genuine issue of fact as to whether Deckers' conduct was misleading. By that point, there were simply too many other indicia that Deckers no longer had any interest in asserting the '650 patent with respect to the Knit Tall boot. A general carve-out of any "intellectual property claims not asserted in this litigation" would thus have done little to suggest to Defendants that a claim for patent infringement concerning *this* specific boot style was still on the table. Instead, Defendants would have likely (and reasonably) assumed that the carve-out related to intellectual property claims concerning *other* boot styles that were not the subject of the litigation. As a result, the Court concludes that Defendants have satisfied this element.

**2. Reliance**

This element is satisfied where "[t]he accused infringer . . . show[s] that . . . it substantially relied on the misleading conduct of the patentee in connection with taking some action." *A.C. Aukerman*, 960 F.2d at 1042–43. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls

---

[3] Deckers asserts numerous other reasons why it did not unreasonably delay in bringing suit. (*See generally* Opp'n at 3–7, 9–13.) It is unclear if these arguments relate only to Defendants' laches defense or whether they are also intended to rebut Defendants' equitable estoppel defense. If the latter, they fail because Deckers does not show that Defendants were aware of any of these reasons. *See A.C. Aukerman*, 960 F.2d at 1034 (unlike laches, "equitable estoppel focuses on what the defendant has been led to reasonably believe from the plaintiff's conduct").

the infringer into a sense of security in [engaging in the infringing activity]." *Id.* at 1043. This element is satisfied for much the same reasons previously described. Defendants offered in 2009 to cease selling the boot if Deckers so wished. Despite this, Deckers ignored the offer, failed to assert any infringement claims despite ongoing litigation between the two regarding that exact boot, and then implicitly accepted Defendants' continued sale of the boot in settling that action. The only reasonable inference from the evidence is that Defendants continued selling the boot after April 2009 in reliance on Deckers' misleading conduct.

### 3. Prejudice

"Finally, the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed. . . . [T]he prejudice may be a change of economic position or loss of evidence." *A.C. Aukerman*, 960 F.2d at 1043. Defendants assert both economic and evidentiary prejudice. As to economic prejudice, Defendants note that they have sold nearly 750,000 pairs of knit boots to date in reliance on Deckers' misleading conduct. (Mot. at 9–10, 13–17.) Defendants also assert that they invested substantial resources to develop and market the Knit Tall boots. (*Id.*) As to evidentiary prejudice, Defendants argue that a critical witness—Jean Romeo—passed away in 2011, and that she was the only person who would have remembered the design process for the Knit Tall boot. (*Id.* at 7–9, 13–17.) Defendants also argue that evidence relating to numerous potential prior art references are no longer available to support their invalidity counterclaims. (*Id.*)

The Court concludes that Defendants have suffered clear economic prejudice as a result of Deckers' misleading conduct. In their April 2009 letter to Deckers, Defendants offered to completely cease selling the Knit Tall boot and to pay $1,500 to Deckers, which was based on profits from selling 240 Knit Tall boots. Had Deckers accepted the offer, this would have been the extent of Defendants' loss (or at least something close to it). Now, six years later, Defendants have sold over 750,000 knit boots, a substantial portion of which form the basis of Deckers' damages claim.

(Compl., Prayer for Relief ¶¶ 6, 7, 9, ECF No. 1.) The substantial increase in Defendants' exposure constitutes clear economic harm. *See A.C. Aukerman*, 960 F.2d at 1033 ("[A] patentee may [not] intentionally lie silently in wait watching damages escalate, particularly where an infringer, if he had had notice, could have switched to a noninfringing product." (citations omitted)); *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed. Cir. 2010) ("Clariti's development of its AirMag® business, in reliance on Aspex's silence after its aggressive letters, represents a significant change in economic position and constitutes material prejudice sufficient to support equitable estoppel."). Moreover, Defendants likely suffered economic harm in the form of lost business opportunity—that is, had Deckers accepted Defendants' offer to cease selling the product in 2009, the time and money Defendants subsequently invested in the Knit Tall boot could have been spent on other products or business ventures.

Based on the clear economic prejudice Defendants suffered, the Court need not address the evidentiary prejudice Defendants purportedly suffered.

### 4. Intentional Copying

Deckers argues that Defendants should be precluded from asserting an equitable estoppel defense because they intentionally copied Deckers' boot designs. (Opp'n at 13–14.) An alleged infringer may be precluded from asserting an equitable estoppel defense where the infringer "has engaged in particularly egregious conduct that would change the equities significantly in plaintiff's favor." *A.C. Aukerman*, 60 F.2d at 1033. This includes conscious copying of the patentee's invention or design. *Id.* at 1033, 1044. However, conscious copying does not automatically preclude an equitable estoppel defense; rather, it is simply another factor for the Court to weigh in determining whether the equities are in the infringer's favor. *Id.*

Deckers points to the following as evidence of copying: (1) Defendants have a "history of knocking-off UGG® styles beginning in or around 2009"; (2) the visual appearance of Defendants' boots are nearly identical to the boots depicted in Deckers'

patents; (3) customer reviews of Defendants' products characterize them as "cheaper" versions of UGG® boots; (4) e-mails from Defendants' employees discussing the possibility of "duplicating" the look of UGG® boots; and (5) the absence of any evidence (including design sketches) showing how Defendants conceived of the infringing boots in this action. (Opp'n at 13–14; SUF 89–99.)

This evidence does not tip the equities in Deckers' favor. First, Deckers' bare assertion that Defendants have "a history" of knocking off UGG® styles is not supported by any evidence and thus is meaningless on summary judgment. Second, while substantial similarity in the appearance of certain boots may give rise to an inference of copying, customers' subjective perceptions of the similarity between these boots add nothing to the conscious copying inquiry. Third, none of the evidence of conscious copying (aside from the purported visual similarity between the '650 patent and the Knit Tall boot) relate specifically to the Knit Tall boot, and thus it is unclear that this evidence should even factor into the equation here. *Cf. Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407, 432 (2014) (noting that "the equitable doctrine of unclean hands applies when a plaintiff has acted unconscionably, in bad faith, or inequitably *in the matter in which the plaintiff seeks relief*. The misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." (citations omitted) (emphasis added)). Whatever relevant evidence of conscious copying remains after these considerations is insufficient to create a genuine issue as to the application of equitable estoppel. Deckers could have nipped this entire dispute in the bud in April 2009 by accepting Defendants' offer to cease selling the Knit Tall boot. Deckers can hardly complain about Defendants' purported copying of its design when it so easily could have stopped the copying virtually at its inception—and at almost no cost to Deckers.

For these reasons, the Court concludes that Deckers is equitably estopped from

asserting its claim for infringement of the '650 patent. The Court therefore does not address laches with respect to this patent.

**B.     The '999 Patent**

   **1.     Equitable Estoppel**

Defendants argue that Deckers is also equitably estopped from asserting the '999 patent. Defendants contend that they began openly and notoriously selling their Victorian boot style in July 2009 and began selling their Abigail Youth boot style in December 2009. (Mot. at 4, ECF No. 101.) Both boot styles (at least in their current form) are similar in that they both have one large button on the side of the boot. (SUF 81.) Although Deckers never sent a cease-and-desist letter to Defendants concerning either boot, Deckers asserted trade dress claims against Defendants concerning the Victorian boot style in the 2010 Action. (SUF 29; Alaniz Decl., Ex. 1, ECF No. 103.) Defendants allege that Deckers knew (or should have known) by 2009—or at least by 2010—that it was selling "one-button boots," and thus Deckers' failure to assert a patent infringement claim until April 2015 was misleading. (Mot. at 12–13.) The Court concludes that genuine issues of fact preclude summary judgment here.

The overarching problem with Defendants' argument is that they fail to distinguish among the myriad one-button boot styles that are the subject of this infringement claim. As previously noted, Defendants sell multiple "one-button boot" styles, five of which are at issue in this lawsuit. Despite this, Defendants do not even address three of the styles; they only address the Victorian boot style and the Abigail Youth boot style. Moreover, the facts Defendants assert concerning these two boot styles are ambiguous at best. For example, Deckers presents evidence that at the time of the 2010 Action, there was a style of Victorian boot had *two* buttons—one on each side of the boot. (SUF 75.) According to Deckers, this two-button version does not infringe on the '999 patent; only the one-button version at issue in this lawsuit does. (SUF 77.) Defendants do not dispute the existence of a two-button Victorian boot at the time of the 2010 Action. Moreover, the pictures of the Victorian boot in the

complaint in the 2010 Action depicts only one side of the boot, and thus it is not clear which version was at issue in that lawsuit. As a result, there is insufficient evidence for the Court to conclude that "the patentee has known of the [infringer's] activities for some time," as is required for an equitable estoppel defense. *A.C. Aukerman Co.*, 960 F.2d at 1042.

Similarly, while Defendants state that they began selling the Abigail Youth boot in December 2009, they do not include any specific information (or evidence) as to where and how *that particular* style was sold and marketed; Defendants merely make broad and sweeping statements that it sold its "one-button boots" openly and notoriously. (Mot. at 4; SUF 24.) This is insufficient for the Court to infer that Deckers undoubtedly knew of the Abigail Youth style boot in December 2009. Finally, despite Defendants' insistence that the 2010 Action included the same one-button boot styles at issue in this lawsuit, there is no evidence at all that the 2010 Action ever included the Abigail Youth boot, the Abigail Toddler boot, the Diva boot, or the Elena boot. It is troubling that Defendants attempt to sweep all of these material differences between the various boot styles under the rug by broadly referring to them all as "one-button boots."

In sum, the Court cannot conclude that there was even any unwarranted delay in bringing suit, let alone delay that misled Defendants, and thus the Court declines to grant summary judgment on Deckers' '999 patent based on equitable estoppel.

**2. Laches**

Defendants also argue that the doctrine of laches bars assertion of the '999 patent. A laches defense is similar to an equitable estoppel defense, except that laches focuses on the unreasonableness of the patentee's delay in bringing suit rather than on whether the patentee's conduct misled the defendant.[4] To establish a laches defense, the defendant must show: (1) "the patentee's delay in bringing suit was unreasonable

---

[4] Of course, a patentee's delay in bringing suit, when combined with other factors, will often mislead the infringer. *See A.C. Aukerman Co.*, 960 F.2d at 1043. Thus, these two defenses frequently overlap.

and inexcusable"; and (2) "the alleged infringer suffered material prejudice attributable to the delay." *A.C. Aukerman Co.*, 960 F.2d at 1028. The Supreme Court recently held that laches does not bar recovery of damages where, as here, the patentee brings suit within the limitations period (i.e., within six years after the infringement occurred). *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 967 (2017). Nonetheless, laches may still bar injunctive relief. *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 807 F.3d 1311, 1332 (Fed. Cir. 2015) (en banc), *vacated on other grounds*, 137 S. Ct. 954 (2017). To be entitled to injunctive relief, a patentee "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). As the Federal Circuit recently held:

> Consideration of laches fits naturally into this framework. . . . Many of the facts relevant to laches, such as the accused infringer's reliance on the patentee's delay, fall under the balance of the hardships factor. Unreasonable delay in bringing suit may also be relevant to a patentee's claim that continued infringement will cause it irreparable injury. More than anything, district courts should consider all material facts, including those giving rise to laches, in exercising its discretion under *eBay* to grant or deny an injunction.

*SCA Hygiene Prod. Aktiebolag*, 807 F.3d at 1331.

Here, while Defendants extensively address the unreasonableness of Deckers' delay in bringing suit, Defendants do not address any of the *eBay* factors. As a result, Defendants have not shown that Deckers' delay in bringing suit outweighs the other equitable factors that may favor entering an injunction. Consequently, Defendants have not met their burden of showing that the *only* reasonable conclusion is that injunctive relief is barred.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. (ECF No. 101.) The Court holds that Deckers' claim for infringement of the '650 patent is barred based on equitable estoppel. However, genuine issues of fact exist as to whether Deckers' claim for infringement of the '999 patent is barred by either laches or equitable estoppel.

**IT IS SO ORDERED.**

June 13, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**