# United States District Court
# Central District of California

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO & JULIETTE, INC.; THOMAS ROMEO; and DOES 1-10, inclusive,<br><br>Defendants. | Case № 2:15-cv-02812-ODW (PLAx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [89]** |

## I. INTRODUCTION

Plaintiff Deckers Outdoor Corporation designs and sells "UGG" brand boots and owns several design patents related to those boots. Defendant Romeo & Juliette, Inc., owned by Defendant Thomas Romeo, also designs and sells boots under the brand names BearPaw and Attix. Deckers alleges that several of Defendants' boot styles infringe on three of its design patents: (1) U.S. Patent No. D599,999 ("the '999 patent"); (2) U.S. Patent No. D616,189 ("the '189 patent"); and (3) U.S. Patent No. D582,650 ("the '650 patent"). Defendants have counterclaimed for non-infringement and invalidity for those same three patents and for U.S. Patent No. D642,781 ("the '781 patent"). Deckers now moves for summary judgment on Defendants' invalidity counterclaims. The Court concludes that Deckers is entitled to summary judgment on the counterclaims for invalidity as to the '650 patent, the '999 patent, and the '781

patent, but not as to the '189 patent. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Deckers' Motion.[1]

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott*, 550 U.S. at 378.

## III. DISCUSSION

Defendants assert that the designs in each patent are obvious in light of prior art and thus the patents are invalid.[2] "A patent is invalid 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person

---

[1] After considering the papers submitted by the parties, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] The Court previously rejected Defendants' assertion that the '650, '999, and '189 patents were invalid based on indefiniteness. (ECF No. 61.) Moreover, while Defendants previously asserted that the '781 patent was anticipated by prior art, they appear to have abandoned that argument.

having ordinary skill in the art to which said subject matter pertains.'" *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1373 (Fed. Cir. 2015) (quoting 35 U.S.C. § 103(a) (2006)).[3] "In addressing a claim of obviousness in a design patent, 'the ultimate inquiry . . . is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009)). "When assessing the potential obviousness of a design patent, a finder of fact employs two distinct steps: first, 'one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design'; second, '[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design.'" *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)). An obvious modification to a single primary prior art reference can also invalidate a patent, even without any secondary references. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000). An infringer must "prove invalidity by clear and convincing evidence," and must also carry "the initial burden of going forward with evidence to support its invalidity allegation." *Titan Tire Corp.*, 566 F.3d at 1376.

"Obviousness under 35 U.S.C. § 103 is a legal conclusion involving four factual inquiries. These inquiries consist of: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996)

---

[3] Because the application that led to the patents in this case were filed prior to March 16, 2013, the America Invents Act's amendments to § 103 do not apply. *See Cadence Pharm.*, 780 F.3d at 1374 n.2.

(citations and internal quotation marks omitted). "Where . . . the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) (citations omitted).

**A.     Scope of the Prior Art**

Deckers argues that several of the prior art references on which Defendants rely do not qualify as prior art because there is no admissible evidence establishing their sale or publication dates. (Reply at 1–6, ECF No. 131.)

"The term 'prior art' as used in section 103 refers at least to the statutory material named in 35 U.S.C. § 102." *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354 (Fed. Cir. 2003). Section 102 contains several complex sections that define the universe of prior art references. In general, prior art is the body of knowledge publicly available to a person skilled in the particular art or field of the invention at the time the invention was made or one year prior to the filing of the patent application. *See generally* 35 U.S.C. § 102 (2006); *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1305 (Fed. Cir. 2006). Thus, to be considered "prior art," the art generally must have been patented, described in a printed publication, in public use, or offered for sale during the relevant time period. *See generally OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1402 (Fed. Cir. 1997).

The following table summarizes the prior art references on which Defendants rely, as well as the Court's conclusion as to which prior art references are admissible:

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

| Patent | Defendants' Asserted Prior Art | Admissible Prior Art |
|---|---|---|
| '650 patent | <ul><li>Rebels Cayenne boot</li><li>U.S. Patent No. D500,583</li><li>U.S. Patent No. D561,983</li></ul> | <ul><li>The '583 patent</li><li>The '983 patent</li></ul> |
| '999 patent[4] | <ul><li>EMU Australia Barossa boot</li><li>EMU Australia Matilda boot</li><li>Steve Madden Missy boot</li><li>Sketchers Shinding Scintilla boot</li><li>Sketchers Voyagers Angel Face boot</li><li>Earth Dakota boot</li><li>Camper Industrial boot</li><li>U.S. Patent No. D529,269</li><li>UGG Classic boot</li></ul> | <ul><li>Earth Dakota boot</li><li>The '269 patent</li><li>UGG Classic boot</li></ul> |
| '189 patent | <ul><li>Born Malawi boot</li><li>Minnetonka Solitude boot</li><li>U.S. Patent No. D575,495</li><li>U.S. Patent No. D539,024</li><li>U.S. Patent No. D581,140</li><li>U.S. Patent No. D591,496</li><li>UGG Bailey Button boot</li></ul> | <ul><li>The '495 patent</li><li>The '024 patent</li><li>The '140 patent</li><li>The '496 patent</li><li>UGG Bailey Button boot</li></ul> |
| '781 patent | <ul><li>UGG Rainier</li><li>Bass Pullon</li><li>Bearpaw Elise</li><li>Bearpaw Tama</li><li>U.S. Patent No. D335,946</li></ul> | <ul><li>UGG Rainier</li><li>The '946 patent</li></ul> |

The Court addresses Deckers' arguments regarding each of the prior art references in detail below.

---

[4] Defendants also contend that the prior art asserted as to the '999 patent also invalidates the '189 patent, and vice-versa. However, aside from this conclusory assertion, Defendants do nothing to develop this argument. The Court therefore considers this argument waived. *See, e.g.*, *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . ."); *United States v. Ramirez*, 448 F. App'x 727, 729 (9th Cir. 2011).

### 1. The '650 Patent

#### i. Rebels Cayenne Boot

Defendants argue that this boot was sold between 2004 and 2008. (SUF 94–96.) In support of their contention, Defendants rely on an e-mail sent to their counsel from the CEO of the company that sold the boot. (Alaniz Decl., Ex. 1, ECF No. 103.) Deckers argues that this e-mail is inadmissible and thus that there is no competent evidence that the boot was ever available in the public domain. (Reply at 1–2, ECF No. 131.) The Court agrees. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Hearsay, which is an out-of-court statement used to prove the truth of the matter asserted, is not admissible unless there is an applicable exception. *See* Fed. R. Evid. 801(c), 802. Here, the assertion by the CEO clearly constitutes hearsay: the statement that the boot was sold between 2004 and 2008 was made out of court and is used to prove the very fact asserted. Moreover, there does not appear to be any applicable hearsay exception. Consequently, Defendants fail to show that the boot was ever publicly accessible, and thus it does not constitute prior art.

The Court also notes that Defendants fail to authenticate any of the pictures that they contend correspond to this boot style. This is problematic in two ways. First, of course, if the pictures are not authenticated, they are inadmissible on summary judgment for the purpose of an obviousness analysis. *Orr*, 285 F.3d at 773. Second, because there is no evidence showing that these pictures actually correspond to this boot style, the evidence purporting to prove the date this boot style was publicly available is meaningless. All we know is that *some* boot called "Rebels Cayenne boot" was offered for sale between 2004 and 2008; there is no evidence that the boots in these pictures (which form the entire basis of the obviousness analysis) are in fact the "Rebels Cayenne boot," and thus there no evidence that the boots in those pictures were offered for sale in the relevant time frame. For this additional reason, the boots

shown in those pictures do not constitute prior art.

### 2. The '999 Patent

#### i. EMU Australia Barossa / Matilda Boots

Defendants contend that these boots were available for sale in the United States beginning in 2008. (SUF 103, 105.) Defendants rely on the declaration of Jeffrey Weinstein, who was an independent sales representative for EMU Australia at that time to establish this fact. (Alaniz Decl., Ex. 4.) Deckers contends that Weinstein's affidavit lacks foundation because he was not an officer or director of EMU Australia. (Reply at 2.) The Court disagrees. As an individual who sold these boots on EMU Australia's behalf, he has the requisite knowledge and foundation to make these statements. Nonetheless, the Court concludes that these boots are inadmissible as prior art because Defendants fail to authenticate any of the pictures that they contend correspond to this boot style.

#### ii. Steve Madden Missy Boot

Defendants contend that this boot was available for sale in the United States beginning in July 2007. (SUF 107.) Defendants rely on business records produced by Steve Madden, Ltd. in response to a document subpoena to prove this fact. (Alaniz Dec., Ex. 3.) Deckers contends that the records are inadmissible because they have not been authenticated. (Reply at 3.) While evidence generally must be authenticated to be admissible, Fed. R. Evid. 901(a), business records are self-authenticating if they meet the requirements of the business records exception to the hearsay rule. Fed. R. Evid. 803(6), 902(11). The proponent of such evidence must demonstrate compliance with these requirements through "a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). Here, Defendants do not submit any certification demonstrating compliance with those requirements, and thus the records are inadmissible on summary judgment. *Orr*, 285 F.3d at 773. The Court also concludes that these boots are inadmissible as prior art because Defendants fail to authenticate

any of the pictures that they contend correspond to this boot style. Accordingly, Defendants have not demonstrated that this boot constitutes prior art.

### iii. Sketchers Shinding Scintilla / Voyagers Angel Face Boots

Defendants contend that these boots were available for sale in the United States through a shoe company called Sketchers beginning in July 2006. (SUF 108, 110.) To establish this, Defendants rely on: (1) what appears to be a printout of a Sketchers online catalog; and (2) sale invoices produced by Sketchers to Defendants, ostensibly in response to a document subpoena. (Alaniz Decl., Ex. 6.) The catalog printouts have not been authenticated[5] and thus are not admissible. *Orr*, 285 F.3d at 773. The sales invoices, on the other hand, are supported by the declaration of a Vice President at Sketchers which meets the requirements of Rules 803(6) and 902(11). Nonetheless, the Court concludes that these boots are inadmissible as prior art because Defendants fail to authenticate any of the pictures that they contend correspond to this boot style.

### iv. Earth Dakota Boot

Defendants contend that these boots were available for sale in the United States through a shoe company called Earth beginning in January 2007. (SUF 112.) To establish this, Defendants rely on a declaration to that effect from the Vice President of Finance and Operations at Earth, which includes as an exhibit a Fall 2007 catalogue that depicts the Dakota Boot. (Alaniz Decl., Ex. 7.) Deckers argues that this is insufficient because the declarant "does not explain the basis for his knowledge." (Reply at 3.) The Court disagrees. The declarant's position at the company is sufficient for the Court to infer that he would know the facts attributed to him, including that the catalogue attached is indeed one from Fall 2007. Thus, the declaration is sufficient to establish the timeframe in which these boots were offered for sale, and thus the boot style constitutes prior art for the purpose of an obviousness analysis.

---

[5] The declaration submitted by Strasser relates to the invoices only and thus does not authenticate the catalogue printouts.

####### v. Camper Industrial Boot

Defendants contend that these boots were available for sale in the United States as early as 2004. (SUF 114.) To establish this, Defendants rely on an e-mail from a person in Camper's Legal Department to Defendants' counsel stating that this boot was sold in 2004. (Alaniz Decl., Ex. 8.) This is insufficient, as the relevant statements in the e-mail constitute inadmissible hearsay with no applicable exception. *See* Fed. R. Evid. 801(c), 802. The Court also concludes that these boots are inadmissible as prior art because Defendants fail to authenticate any of the pictures that they contend correspond to this boot style.

### 3. The '189 Patent
#### i. Born Malawi Boot

Defendants contend that H.H. Brown Shoe Company, a division of Born Footwear, sold this boot in the United States as early as May 2008. (SUF 122.) To establish this, Defendants rely on a statement by the Vice President of Corporate Administration of H.H. Brown Shoe Company purporting to attest to this fact and to authenticate a photograph of the boot. (Alaniz Decl., Ex. 11.) Deckers argues that the statement is inadmissible because it was not made under penalty of perjury. (Reply at 4–5.) The Court agrees. A declaration may be considered only if it is "subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." 28 U.S.C. § 1746(2). While declarations need not include this statement verbatim, the declarant must at least assert that the statements made in the declaration are made "under penalty of perjury." *See Schroeder v. McDonald*, 55 F.3d 454, 462 n.10 (9th Cir. 1995); *Luxul Tech. Inc. v. NectarLux, LLC*, No. 14-CV-03656-LHK, 2016 WL 3345464, at *5 (N.D. Cal. June 16, 2016). Here, the declaration at issue contains no such assertion, and thus the Court may not consider it on summary judgment. Without it, Defendants have not demonstrated that this boot constitutes prior art.

### ii. Minnetonka Solitude Boot

Defendants contend that these boots were available for sale through a shoe company called Minnetonka as early as July 2007. (SUF 124.) Defendants rely on documents that it received from Minnetonka in response to a subpoena, which Defendants contend demonstrate the sale dates of these boots. (Alaniz Decl., Ex. 9.) Deckers argues that this evidence is inadmissible because there is no declaration authenticating these documents. (Reply at 4.) The Court agrees. As previously noted, business records are self-authenticating only where the proponent of such evidence demonstrates compliance with the requirements of Rule 803(6) through "a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). Defendants do not include any such certification here. Thus, the documents are inadmissible. Accordingly, Defendants have not demonstrated that this boot constitutes prior art.

### 4. The '781 Patent

#### i. Bass Pullon

Defendants contend that these boots were offered for sale in the 1980s. (SUF 137.) To establish this, Defendants rely on several photographs and the declaration of Defendants' counsel authenticating the photographs and averring that the boots were in fact available for sale in the 1980s. (Alaniz Decl. ¶ 15, Ex. 14.) This is clearly insufficient. Defendants' counsel lays no foundation for how he would know whether or not the boots were available for sale in the 1980s, and thus this does not constitute admissible evidence. Accordingly, Defendants have not demonstrated that this boot constitutes prior art.

#### ii. Bearpaw Elise and Bearpaw Tama

Defendants contend that these boots were offered for sale in 2006. (SUF 140, 142.) Defendants rely on the declaration of Defendant Thomas Romeo to this effect, which also includes photographs of both boot styles. (Alaniz Decl., Ex. 12.) Deckers

argues that a single self-serving declaration as to the date these boots were offered for sale is insufficient. (Reply at 5–6.) The Court agrees. "The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999). "Mere testimony concerning invalidating activities is received with further skepticism because such activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process." *Id.* Thus, the Court requires more than a single declaration attesting to facts that would establish the sale or publication date of prior art. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571719, at *10 (N.D. Cal. June 30, 2012); *Colucci v. Callaway Golf Co.*, 750 F. Supp. 2d 767, 774 (E.D. Tex. 2010) ("[W]ithout the requisite evidence corroborating Mr. Hansberger's testimony that the alleged prior art putter preceded Colucci's invention, the Court cannot reach the legal merits on Callaway's obviousness contention."). This is particularly so where, as here, the declarant has an interest in the outcome of the litigation. *See Finnigan Corp.*, 180 F.3d 1367–68. As a result, the Court concludes that neither the Bearpaw Elise nor the Bearpaw Tama constitutes prior art.

**B.     Similarities and Differences with Prior Art**

    **1.     The '650 Patent**

Defendants argue that the '983 patent serves as the primary prior art reference for the '650 patent. (Opp'n at 8, ECF No. 124.) Defendants also argue that several other prior art references, including the '583 patent, can serve as secondary references that modify the primary reference to achieve Deckers' patented design. (*Id.*)

/ / /

/ / /

/ / /

/ / /

The following illustrate several views of the '650 patent and the '983 patent:

**'650 Patent**



**'983 Patent**



The Court agrees with Deckers that no reasonable jury could find the boot

design in the '983 patent to be "basically the same" as the design in the '650 patent, *High Point Design*, 730 F.3d at 1311, and thus it may not serve as the primary prior art reference. The only similarities between the two boots are that they are high-shaft boots seemingly comprised of knit material. Critically, however, the boot in the '983 patent has no side opening at all (let alone a side flap), its shaft is circular rather than oval, and there are prominent seams running vertically up each side of the shaft. Indeed, it is clear that the prominent design feature of the boot in the '650 patent is the side flap and opening, which is wholly absent from the '983 patent. Moreover, the side opening enables the shaft of the boot to be folded down (as shown in the final picture), which allows the boot to take on a radically different look if the user so chooses. This makes it markedly dissimilar from the '983 patent.

The Court is also not convinced that the side flap would be an obvious modification to the '983 boot. Defendants point to the '583 patent, which shows a zipper running down an otherwise-dissimilar high-shaft boot, and suggest that all side-openings (including side-flaps) are simply common and obvious functional elements that allow the user to insert their foot into the boot. While side-openings certainly serve a functional purpose, the wide variation in types of side-openings show that there are unique aesthetic characteristics among them—particularly with respect to the '650 boot. For example, the side flap on the '650 patent extends only halfway down the shaft, as opposed to all the way down the shaft; the flap overlaps the shaft material substantially; and the shaft folds down to create a shorter boot. These are all unique to the boot in the '650 patent, and Defendants do not identify any prior art references that would suggest these features. The conclusory opinion of Defendants' expert to the contrary is insufficient to create a genuine dispute on these issues. *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012). Thus, summary judgment as to Defendants' invalidity counterclaim for the '650 patent is warranted.

/ / /

### 2. The '999 Patent

Defendants argue that the EMU Australia Barossa boot or the EMU Australia Matilda boot can serve as primary prior art references for the '999 boot. However, the Court has concluded that neither boot constitutes admissible prior art. Without any primary reference, Defendants cannot prove obviousness. Thus, summary judgment as to Defendants' invalidity counterclaim for the '999 patent is warranted.

### 3. The '189 Patent

#### i. Primary Prior Art Reference

Defendants argue that Deckers' UGG Bailey Button boot can serve as the primary prior art reference for the '189 boot. The following illustrate several views of the '189 design and the Bailey Button boot:

**'189 Patent**





## UGG Bailey Button Boot

  

 

The Court concludes that a reasonable jury could view the UGG Bailey Button boot as "basically the same" as the boot design in the '189 patent, and thus the boot can serve as a primary prior art reference. *High Point Design*, 730 F.3d at 1311. There are substantial similarities between the two boots: the button-side of each boot has the exact same pronounced vertical stitching; the exact same pronounced stitching going across the front ankle portion of the boot; the exact same button, cross-stitching attaching the button, button loop, and seam patch; the exact same pronounced vertical stitching on the non-button side going from the sole to the top of the boot; the same V-

1 shaped notch at the top of the boot; the same fluffy interior lining protruding from the
2 top of the boot; and several other similarities.

3 Deckers' expert, Caroline de Baër, points out that the two boots are dissimilar in that: (1) the boot shaft in the '189 patent is taller than the Bailey Button boot; (2) the boot in the '189 patent has three button-loop systems, whereas the Bailey Button boot only has one; and (3) the back of the boot in the '189 patent has a vertical seam and a seam overlay patch, whereas the Bailey Button boot does not. (de Baër Decl. ¶ 52.) The Court concludes that these differences do not necessarily preclude the Bailey Button boot from serving as a primary prior art reference. The first two differences are substantially interdependent—a shorter boot shaft requires fewer button-loops—and thus do not really constitute two distinct differences. Moreover, the taller shaft size of the '189 boot over the Bailey Button boot is not as significant a difference as it might appear at first blush; indeed, a mere increase in shaft size (and concomitant addition of two buttons-loops) is a conceptually simple and minor modification to the Bailey Button boot. And while the absence of both a back seam and a seam overlay patch does cut against a finding that the Bailey Button boot is a primary prior art reference, the Court does not consider it to be dispositive on summary judgment. Thus, a reasonable jury could conclude that the Bailey Button boot is a primary prior art reference.

### ii. Other Prior Art References

Defendants contend that there are four other patented boot designs that could be used to modify the UGG Bailey Button boot to achieve the design in the '189 patent. Each of these other patented boots consists of boots with tall shafts and three loop-closure systems, as illustrated below:

/ / /
/ / /
/ / /
/ / /



| The '495 Patent | The '024 Patent | The '140 Patent | The '496 Patent |

Defendants submit the declaration of their expert, Linda Poetsch, who attests that increasing the height of the shaft of the Bailey Button boot, so as to include three button loops instead of one, would be an obvious modification to a person reasonably skilled in the art at the time. (Poetsch Decl. ¶ 51.) While Deckers points out that Poetsch does not specifically reference these four patents in her declaration, she does reference other boots with similar triple-loop closure systems. (*Id.* ¶ 49.) The obvious import of her testimony is that a tall shaft and a triple-loop closure system are fairly common elements in certain boot designs, and thus they would be obvious modifications to make to the Bailey Button boot. To the extent Deckers' expert disagrees with Poetsch's conclusion, this is a factual dispute for the jury to resolve. Finally, Defendants' expert testifies that adding prominent stitching to a boot is also an obvious modification to one skilled in the art, thus also suggesting that the changes in the design as a whole were obvious.

### iii. Secondary Considerations

Deckers points to various secondary indicia of non-obviousness. Secondary considerations include: "commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016). Deckers here points to: (1) the fact that the sale of Bailey Button Boots have exceeded 100,000 pairs every

year; (2) the fact that the Bailey Button Triplet (which is the embodiment of the '189 patent) "rank[s] high amongst the styles offered" by UGG; (3) the fact that the boot receives significant unsolicited media exposure; and (4) the fact that the boot has been the target of unauthorized third-party copying, as evidenced by the numerous infringement lawsuits Deckers has filed. (Mot. at 17–18.) These considerations do not warrant a different outcome. First, Deckers does not show that the commercial success of the Bailey Button Boot is due to the unique features of the '189 patent. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) ("[T]he patentee must establish a nexus between the evidence of commercial success and the patented invention."). That is, it is not clear that the commercial success of the Bailey Button Triplett was not due to general recognition of the UGG brand, the comfort (rather than the look) of the boot, or even the basic look of the Bailey Button boot from which the '189 patent improved on. *See J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) ("[T]he asserted commercial success of the product must be due to the merits of the claimed invention *beyond what was readily available in the prior art*." (emphasis added)). Second, the fact that Deckers has filed numerous lawsuits against other companies for infringement of the '189 patent alone does not establish copying. *Wyers*, 616 F.3d at 1246 ("Not every competing product that arguably falls within the scope of a patent is evidence of copying; otherwise, 'every infringement suit would automatically confirm the nonobviousness of the patent.'" (quoting *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004))). And while the remaining indicia identified by Deckers could suggest non-obviousness to a reasonable jury, the Court is not convinced that the evidence is such that *any* reasonable jury *must* conclude that the '189 patent is not obvious. *Cf. id.* ("[S]econdary considerations of nonobviousness . . . simply cannot overcome a strong prima facie case of obviousness.").

For these reasons, summary judgment on obviousness as to the '189 patent is inappropriate.

### 4. The '781 Patent

Defendants contend that the UGG Rainier boot can serve as the primary prior art reference for this patent. The Court disagrees. First, the overall appearance of the UGG Rainier is unclear based on the evidence Defendants have presented. Defendants produce the following two pictures of the UGG Rainier boot:



The image on the right has not been authenticated at all, and thus it cannot be considered on summary judgment. *Orr*, 285 F.3d at 773. Indeed, it differs quite significantly from the image on the left in several respects: it has no lace tied around the ankle portion of the boot; the fur appears less fluffy and does not come as far down the ankle; and there appears to be an enlarged ridge around the top opening. These differences cast substantial doubt on the image's authenticity. Moreover, the image on the left gives only a single view of the boot. Based on this single view, no reasonable factfinder could find by clear and convincing evidence that the design characteristics of this boot are "basically the same" as the images in the '781, *High Point Design*, 730 F.3d at 1311, for the simple fact that one would not even know what the other half of the UGG Rainier boot looks like. Thus, summary judgment as to Defendants' invalidity counterclaim for the '781 patent is warranted.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Deckers' Motion for Summary Judgment. (ECF No. 89.) The Court holds that Deckers is entitled to summary judgment on Defendants' counterclaims for invalidity of the '650 patent, the '999 patent, and the '781 patent. The Court concludes that genuine issues of material fact preclude summary judgment on Defendants' counterclaims for invalidity of the '189 patent.

**IT IS SO ORDERED.**

June 13, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**