# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO & JULIETTE, INC., *et al.*,<br><br>Defendants. | CV 15-02812 TJH (PLAx)<br><br>Findings of Fact<br>and<br>Conclusions of Law |

From April 3 to April 6, 2018, Plaintiff Deckers Outdoor Corporation's ["Deckers"] claims that Defendant Romeo & Juliette, Inc. ["Romeo & Juliette"] infringed Decker's D616,189 design patent ["'189 Patent"] and D599,999 design patent ["'999 Patent"], and that Defendant Thomas Romeo induced the infringement were tried before a jury, along with Defendants Thomas Romeo's and Romeo & Juliette's [collectively, "Romeo"] affirmative defense of patent invalidity with regard to the '189 Patent. The jury found that Romeo & Juliette willfully infringed both patents and that Thomas Romeo induced the infringement. The jury, also, rejected in an advisory verdict Romeo's argument that the '189 Patent was invalid as obvious.

Thereafter, Romeo's equitable defenses of equitable estoppel and patent invalidity as to the '189 Patent were tried by the Court, sitting without a jury. The Court, having considered the submitted briefs, and having heard the arguments and evidence presented at trial, now, issues the following Findings of Fact and Conclusions of Law for the equitable defenses:

**FINDINGS OF FACT**

1. Deckers is a publicly traded corporation located in Santa Barbara, California. In 1995, Deckers purchased the UGG ® footwear company.

2. Thomas Romeo is the sole shareholder and Chief Executive Officer of Romeo & Juliette, a California corporation located in Citrus Heights, California.

3. Romeo & Juliette designs, manufactures, and sells footwear under the "BearPaw" brand.

4. On September 15, 2009, the United States Patent Office issued the '999 Patent to Deckers.

5. Deckers embodied the '999 patent in its "Bailey Button" boot.

6. On May 25, 2010, the United States Patent Office issued the '189 Patent to Deckers.

7. Deckers embodied the '189 patent in its "Bailey Button Triplet" boot.

8. On November 8, 2010, in this District, Deckers filed an action against Romeo in *Deckers Outdoor Corp. v. Tom Romeo, et al.*, Case No. CV 10-08489 DSF-FMO, alleging, *inter alia*, trade dress infringement with regard to the UGG Classic boot ["2010 Litigation"].

9. In the 2010 Litigation, Deckers alleged, *inter alia*, that a version of Romeo & Juliette's BearPaw Victorian boot infringed the UGG Classic boot's trade dress because the BearPaw Victorian "imitated" Deckers' one-button Bailey Button boot, which embodied the UGG Classic boot.

10. Originally, the BearPaw Victorian boot had two buttons, one on each side;

thereafter, Romeo & Juliette changed the design of the BearPaw Victorian boot so that it had only one button.

11. No party submitted sufficient or credible evidence to establish the date the BearPaw Victorian boots' design changed; however, Romeo & Juliette argued that it changed the design in December, 2010.

12. In February, 2012, Deckers and Romeo entered into a confidential settlement agreement to resolve all claims alleged in the 2010 Litigation ["2012 Settlement Agreement"].

13. The 2012 Settlement Agreement states, *inter alia*, that Deckers and Romeo "desire to fully and finally settle, resolve and release all claims, issues and differences between them in this Agreement. The Parties acknowledge that they are entering into this Agreement to resolve disputed claims… ."

14. Paragraph 1 of the 2012 Settlement Agreement states: "Defendants shall change the shape of the license plate on the heel of all of their footwear from a rectangular shape to any other shape that is not rectangular… . Defendants shall use its best efforts to (i) immediately commence implementation of this change in the design of its footwear and (ii) cease manufacturing of any footwear without the [changed license plate] as soon as possible, which, in no event, shall be later than January 1, 2013 (the "Termination Date"). Defendants shall be allowed to sell off all footwear inventory manufactured prior to the Termination Date without restriction through December 31, 2013."

15. Paragraph 1 of the 2012 Settlement Agreement expressly limited the scope of what Romeo was allowed to sell, and the time period for those sales; namely, Paragraph 1 gave Romeo the "unrestricted" right to sell before December 31, 2013, those boots in inventory that were manufactured prior to January 1, 2013, that had been affixed with a rectangular or square "license plate" logo.

16. Paragraph 2 of the 2012 Settlement Agreement states "nothing in this agreement is intended to grant any license or rights to Defendants under any trademark,

patent, copyright, or other intellectual property right of Deckers, including, without limitation, the UGG and UGG Australia trademarks… . Deckers expressly reserves its rights to protect and enforce its intellectual property rights (and any other rights) that exist worldwide by any appropriate means, including its rights to protect the Deckers Trade Dress rights as defined in the Complaint. Nothing herein shall be deemed a waiver of any intellectual property claims not asserted in [the 2010 Litigation]."

17. Paragraph 2 of the 2012 Settlement Agreement expressly reserved Deckers' right to protect all other intellectual property rights not raised in the 2010 Litigation.

18. The 2012 Settlement Agreement is not a general release.

19. By the clear terms of the 2012 Settlement Agreement, the parties intended to resolve only the claims and issues raised in the 2010 Litigation; thus, the 2012 Settlement Agreement bars Deckers from reasserting only those claims and issues raised in the 2010 Litigation.

20. Romeo's interpretation of the 2012 Settlement Agreement to infer that Deckers allowed it to sell infringing boots without restriction is not supported by the clear and unambiguous restrictive language in Paragraph 1 and the express reservation of rights in Paragraph 2.

21. On April 16, 2015, Deckers filed this action, alleging, *inter alia*, that: (1) Romeo & Juliette's one-button BearPaw Victorian booth, one-button BearPaw Abigail boot, one-button BearPaw Elena boot, and one-button BearPaw Diva boot infringed on Decker's '999 Patent; and (2) Romeo & Juliette's three-button BearPaw Lauren boot infringed on Decker's '189 Patent.

22. The '999 and '189 patent infringement claims were not asserted in the 2010 Litigation.

23. Assuming that Romeo & Juliette changed the BearPaw Victorian boots' design in December, 2010, which would be the most favorable assumption based on the evidence, the one-button Victorian boot could not have been an issue raised in the 2010

Litigation because that case was filed on November 8, 2010; accordingly, Deckers retained the right to enforce its intellectual property rights, including patent rights, against the one-button BearPaw Victorian boot, and its progeny.

24. Deckers did not act in a misleading way when it contractually gave Romeo & Juliette the right to sell potentially infringing boots in the 2012 Settlement Agreement.

25. Neither party submitted sufficient or credible evidence to establish when Deckers first knew about the one-button Bearpaw boot designs.

26. However, Romeo & Juliette argued that Deckers was aware of the one-button designs as early as 2011; even if that were true, Deckers did not act in a misleading manner because Deckers had no obligation to settle claims that exceeded the scope of the 2010 Litigation.

27. The jury found, in an advisory verdict, that the '189 Patent was not invalid as obvious.

28. Any Finding of Fact erroneously categorized below as a Conclusion of Law is hereby incorporated into these Findings of Fact.

## CONCLUSIONS OF LAW

**Equitable Estoppel**

1. Equitable estoppel can be a ban to all relief for patent infringement. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992).

2. To establish its equitable estoppel defense, Romeo & Juliette must prove, *inter alia*, that Deckers knew that Romeo & Juliette's infringed the '999 Patent, and that Deckers' conduct misled Romeo & Juliette to reasonably infer that Deckers did not intend to enforce its patent rights against Romeo & Juliette. *See Aukerman*, 960 F.2d at 1021, 1042.

3. A patentee's inaction, when coupled with other facts regarding the relationship or contacts between the patentee and an alleged infringer, may constitute

misleading conduct if, under the totality of the circumstances, the inaction gave rise to the necessary inference that the claim against the alleged infringer was abandoned. *Aukerman*, 960 F.2d at 1021.

4. In interpreting the 2012 Settlement Agreement, the Court must give effect to the mutual intention of the parties as it existed at the time it was executed. *See Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 68-69 (2017).

5. Generally, the objective intent of the contracting parties is determined by only the contract's terms. *Walt Disney*, 10 Cal. App. 5th at 69.

6. The Court must consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret particular contractual language in isolation. *Walt Disney*, 10 Cal. App. 5th at 69.

**Patent Invalidity**

7. Patents are presumptively valid upon issuance. 35 U.S.C. § 282.

8. Inherent in the presumption of validity is a presumption of non-obviousness. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359-1360 (Fed. Cir. 2007).

9. To overcome the presumption of validity, Romeo & Juliette, as the party challenging the '189 Patent's validity, must prove that the patent is invalid by clear and convincing evidence. *Pfizer*, 480 F.3d at 1359.

10. When the Court submitted the issue of obviousness to the jury for its advisory verdict, the factual determinations underlying the question of obviousness were, implicitly, submitted to the jury for its resolution. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1359-1360 (Fed. Cir. 2012).

11. To reach its verdict as to obviousness, the jury considered: (1) The scope and content of prior art; (2) The level of ordinary skill in the art; (3) The differences between the claims invention and the prior art; and (4) Any objective indicia such as commercial success or long-felt need. *See Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1310 (Fed. Cir. 2000).

12. The Court must accept all implicit factual findings supporting the jury's conclusion, provided the implicit findings are supported by substantial evidence. *See Kinetic Concepts*, 688 F.3d at 1359-1360.

13. There was substantial evidence presented at trial to support the jury's implicit factual findings and ultimate conclusion as to obviousness. *See Kinetic Concepts,* 688 F.3d at 1359-1360.

14. The '189 Patent is not invalid as obvious. *See Kinetic Concepts*, 688 F.3d at 1359-1360.

**Remaining Issues**

15. Any Conclusion of Law erroneously categorized as a Finding of Fact is hereby incorporated into these Conclusions of Law.

Date: August 8, 2018

_____
Terry J. Hatter, Jr.
Senior United States District Judge