1   Brent H. Blakely (SBN 157292)
    bblakely@blakelylawgroup.com
2   Jessica C. Covington (SBN 301816)
    jcovington@blakelylawgroup.com
3   BLAKELY LAW GROUP
    1334 Parkview Avenue, Suite 280
4   Manhattan Beach, California 90266
    Telephone: (310) 546-7400
5   Facsimile: (310) 546-7401

6   Tim Byron (SBN 277569)
    tbyron@byronraphael.com
7   BYRON RAPHAEL LLP
    100 Pine Street, Suite 1250
8   San Francisco, CA 94111
    Telephone:  (415) 839-8500
9
    Jordan Raphael (SBN 252344)
10  jraphael@byronraphael.com
    BYRON RAPHAEL LLP
11  1055 West 7th Street, Suite 3300
    Los Angeles, CA 90017
12  Telephone:  (213) 291-9800

13  *Attorneys for Plaintiff*
    *Deckers Outdoor Corporation*
14

15                  UNITED STATES DISTRICT COURT

16                  CENTRAL DISTRICT OF CALIFORNIA

17

18  DECKERS OUTDOOR                ) CASE NO.: 2:15-cv-02812-TJH (PLAx)
    CORPORATION, a Delaware        )
19  Corporation,                   ) **PLAINTIFF DECKERS OUTDOOR**
                                    ) **CORPORATION'S OPPOSITION TO**
20                  Plaintiff,     ) **MOTION FOR NEW TRIAL AS TO**
                                    ) **WILLFULNESS**
21          v.                     )
                                    ) <u>Hearing</u>
22  ROMEO & JULIETTE, INC., a      )
    California Corporation; and THOMAS ) Date:        October 15, 2018
23  ROMEO, an individual; and DOES 1-10, ) Time:      10:00 a.m.
    inclusive,                     ) Ctrm.:        9B
24                  Defendants.    )
                                    )
25                                  ) **Hon. Terry J. Hatter**
                                    )
26  _____ )

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................1

II.     RELEVANT BACKGROUND ................................................3

III.    THERE IS NO BASIS FOR A NEW TRIAL ON WILLFULNESS........6

    A.      Defendants' Motion Is Unsupported and Should be Rejected on This Basis Alone................................................................7

    B.      There Was Overwhelming Evidence Supporting the Jury's Verdict That Defendants' Infringement Was Willful ....................8

    C.      *Defendants*, Not Deckers, Opened the Door on the Advice-of-Counsel Issue.....................................................................11

    D.      This Court Gave Curative Instructions............................................14

    E.      Defendants Failed to Timely Object ................................................15

    F.      Defendants Invited Error When They Refused the Court's Offer to Give Another Curative Instruction............................................16

    G.      Plaintiff's Counsel's Purported Statement Was Isolated ...............16

IV.     CONCLUSION...........................................................................17

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
   546 F. Supp. 2d 1029 (D. Or. 2008) ................................................................. 5

*Afros S.P.A. v. Krauss-Maffei Corp.*,
   671 F. Supp. 1402 (D. Del. 1987)..................................................................... 5

*Anheuser-Busch, Inc. v. Natural Beverage Distributors*,
   69 F.3d 337 (9th Cir. 1995) ........................................................................... 6, 8

*Apple Inc. v. Samsung Elecs. Co.*,
   2017 U.S. Dist. LEXIS 97765 (N.D. Cal. June 22, 2017)................................ 10

*Barry v. Medtronic, Inc.*,
   230 F. Supp. 3d 630 (E.D. Tex. 2017)............................................................. 10

*Barzelis v. Kulikowski*,
   418 F.2d 869 (9th Cir. 1969) ............................................................................ 15

*Coles v. Eagle*,
   2011 U.S. Dist. LEXIS 71634 (Dist. Hawaii 2011) ......................................... 15

*Collender v. City of Brea*,
   2016 U.S. Dist. LEXIS 188758 (C.D. Cal. June 14, 2016) .............................. 16

*Doe ex rel. Rudy- Glanzer v. Glanzer*,
   232 F.3d 1258 (9th Cir. 2000) .......................................................................... 17

*Glover v. BIC Corp.*,
   987 F.2d 1410 (9th Cir. 1993) .......................................................................... 15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)................................................................................... 8, 11

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) (citation omitted) ........................................... 6, 7

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   2018 WL 3348998 (D. Del. July 9, 2018) ........................................................ 12

*Johns Hopkins Univ. v. Alcon Labs., Inc.*,
   2018 U.S. Dist. LEXIS 147691 (Dist. Del. 2018) .............................................. 13

*Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*,
   785 F.2d 656, 658 (9th Cir. 1986) ...................................................................... 15

*Kehr v. Smith Barney, Harris Upham & Co., Inc.*,
   736 F.2d 1283 (9th Cir. 1984) ............................................................................ 14

*Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*
   (D. Colo. May 2, 2017)........................................................................................ 12

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017) .......................................................................... 10

*Merrill v. Cty. of Madera*,
   2007 U.S. Dist. LEXIS 90981 (E.D. Cal. Dec. 10, 2007) .............................. 8, 15

*Multimedia Patent Trust v. Apple Inc.*,
   2013 U.S. Dist. LEXIS 6694 (S.D. Cal. 2013)............................................. 15, 16

*Navarro v. DHL Global Forwarding*,
   2017 U.S. Dist. LEXIS 164825 (C.D. Cal. 2017) ............................................. 17

*Ostad v. Oregon Health Scis. Univ.*,
   327 F.3d 876 (9th Cir. 2003) ................................................................................ 1

*SEC v. Jasper*,
   678 F.3d 1116 (9th Cir. 2012) ............................................................................ 17

*Settlegoode v. Portland Pub. Schools*,
   371 F. 3d 503 (9th Cir. 2004) .............................................................. 7, 15, 17

*Sovak v. Chugai Pharmaceutical Co.*,
   280 F.3d 1266 (9th Cir. 2002) ............................................................................ 16

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
   2014 WL 4976596  (W.D. Wis. Oct. 3, 2014)................................................... 12

*Underwater Devices Inc. v. Morrison-Knudsen Co.*,
   717 F. 2d 1380 (1983)......................................................................................... 11

**PLAINTIFF DECKERS OUTDOOR CORPORATION'S OPPOSITION TO
DEFENDANTS' MOTION FOR A NEW TRIAL AS TO WILLFULNESS**

*United States v. Feldman,*
853 F.2d 648 (9th Cir. 1988)........................................................................ 14, 17

*United States v. Marsh,*
894 F.2d 1035 (9th Cir. 1989) ............................................................................ 14

*United States v. Reyes-Alvarado,*
963 F.2d 1184 (9th Cir. 1992) ............................................................................ 16

*United States v. Sehnal,*
930 F.2d 1420 (9th Cir. 1991) ............................................................................ 16

*United States v. Tiller,*
302 F.3d 98 (3rd Cir. 2002) ................................................................................ 16

*United States v. Young,*
470 U.S. 1 (1985)................................................................................................ 16

*WesternGeco LLC v. Ion Geophysical Corp.,*
837 F.3d 1358 (Fed. Cir. 2016) ............................................................................ 8

*Wyatt v. Horkley Self-Serve, Inc.,*
325 Fed. Appx. 488 (9th Cir. 2009).................................................................... 14

*Zimmer Surgical, Inc. v. Stryker Corp.,*
2017 U.S. Dist. LEXIS 139274 (D. Del. Aug. 29, 2017)................................... 10

STATUTES

35 U.S.C. § 298 .................................................................................6, 7, 11, 12, 13

Fed. R. Civ. P. 59(c) ............................................................................................. 4

H. R. Rep. No. 112-98, pt. 1 (2011)...................................................................... 7

Local Rule 59-1.5 .................................................................................................. 4

OTHER AUTHORITIES

11 Wright & Miller: FEDERAL PRAC. & PROC. § 2809 (2007) ......................... 11

PLAINTIFF DECKERS OUTDOOR CORPORATION'S OPPOSITION TO
DEFENDANTS' MOTION FOR A NEW TRIAL AS TO WILLFULNESS

1    I.    **INTRODUCTION**

2          In April 2018, the jury in this case found Defendants Romeo and Juliette, Inc.

3    and its owner, Thomas Romeo (hereinafter collectively, "Defendants") had infringed

4    two of Plaintiff Deckers Outdoor Corporation's ("Deckers" or "Plaintiff") design

5    patents— U.S. Patent Nos. D599,999 ("the '999 Patent") and D616,189 ("the '189

6    Patent")—and had done so *willfully*. Dkt. No. 264. Unhappy with the jury's verdict,

7    Defendants seek a do-over without any factual or legal justification for a new trial.

8    Defendants received a fair trial.

9          Tellingly, Defendants have not moved pursuant to Rule 50(b) to set aside the

10   jury's willfulness verdict and enter judgment of no willfulness. The reason is obvious:

11   such a motion would be frivolous. Such relief is only proper when the evidence,

12   viewed in the light most favorable to the nonmoving party and with all reasonable

13   inferences drawn in its favor, permits one reasonable conclusion, and that conclusion is

14   contrary to that reached by the jury. *Ostad v. Oregon Health Scis. Univ*., 327 F.3d

15   876, 881 (9th Cir. 2003). Here, the jury's verdict of willfulness is amply supported by

16   the evidence at trial, including internal emails showing that Defendants purchased

17   Deckers' UGG® boots, sought to "duplicate" their looks "at much tighter prices,"

18   redesigned their boot models to "push the envelope just a bit more" toward full-scale

19   copying of Deckers' patented looks, and even internally referred to their Bearpaw

20   boots using the names of the UGG® models that Defendants had knocked off (see Dkt.

21   No. 285-3, Blakely Decl Ex. 11) ("Just look at how many pairs of the Knit Tall/Cardy

22   and Victorian/Bailey were shipping right now."). It would be frivolous for Defendants

23   to seek judgment of no willfulness given this compelling and voluminous evidence of

24   Defendants' deliberate and carefully planned scheme to compete against Deckers using

25   Deckers' patented designs.

26         In recognition of this considerable evidence, Defendants instead make a novel

27   argument that a single statement allegedly made by Deckers' counsel in closing

28   argument so overwhelms the trial record as to constitute a "miscarriage of justice,"

1   thus requiring a new trial.  Dkt. No. 295 at 2.   For several independent reasons, the

2   Court should deny Defendants' motion.

3       **First**, although Defendants' motion is focused exclusively on the content of

4   Deckers' closing argument at trial, Defendants have completely failed to support their

5   argument with any evidence, as required by the Federal Rules of Civil Procedure and

6   the Local Civil Rules of this court.  The jury entered its verdict more than five months

7   ago, and yet Defendants failed to order the trial transcript in time for their motion.  Nor

8   have they sought additional time from the Court to file their motion.  Instead, they

9   have decided to attack a jury's verdict with no record whatsoever—no trial transcript

10  or even an attorney affidavit with sworn statements regarding the trial proceedings.  In

11  so doing, Defendants have frustrated Deckers' ability to respond—rather than analyze

12  the evidence put forward by Defendants, it must rely on its attorneys' fading memories

13  about a jury trial that concluded more than five months ago.  Defendants seemingly

14  expect the Court as well to rely on its recollection of the trial.  Defendants' failure to

15  produce evidence in support of their motion is alone grounds for denial of their

16  Motion.

17      **Second**, as discussed above and in greater detail below, the great weight of the

18  evidence at trial ***supports*** the jury's willfulness finding.  In view of the considerable

19  evidence of willfulness (and Defendants' lack of any evidence rebutting willfulness), it

20  is completely speculative for Defendants to contend the jury reached its willfulness

21  verdict based on allegedly improper attorney argument.

22      **Third**, ***Defendants***—not Deckers—introduced the advice-of-counsel issue to

23  the trial proceedings.  After Deckers had closed its case in chief and admitted its

24  evidence of willfulness into the record, Defendants attempted to rehabilitate their case

25  via testimony from Mr. Romeo that, after learning of Deckers' 2015 lawsuit, he sat

26  down with Romeo & Juliette president John Pierce, analyzed the patents, and

27  determined that the accused boots didn't infringe.  But this is an application of the law

28  to the facts—it requires a legal understanding of what patents cover and how they are

1  infringed, and it strongly implied to the jury that Mr. Romeo or Mr. Pierce—who are

2  not lawyers—received some sort of guidance from a lawyer.  Because Defendants

3  "opened the door" on the issue in a way that could have misled the jury, it would have

4  been entirely proper for Deckers' counsel in closing argument to point out the

5  problems with this testimony—i.e., that it was an improper backdoor attempt to assert

6  an advice-of-counsel defense well after the deadline for doing so.

7      **Fourth**, the Court properly instructed the jury that attorney argument was not

8  evidence, and it even offered to read a curative on the advice-of-counsel defense to the

9  jury.  Deckers had no objection to such a curative being read, but after Defendants

10 failed to advocate for a curative instruction, the Court opted against reading one.  The

11 doctrine of invited error therefore precludes Defendants from now challenging that

12 failure.

13     For these reasons, and as discussed in detail below, the Court should deny

14 Defendants' motion.

15 **II.    RELEVANT BACKGROUND**

16     Deckers, a publicly held corporation located in Santa Barbara, California, owns

17 several brands of footwear, including but not limited to UGG®. The UGG® brand was

18 purchased by Deckers in 1995.  Dkt. No. 280.

19     Defendant Romeo & Juliette, Inc. is a California corporation located in Citrus

20 Heights, California. It is engaged in the business of designing, manufacturing, and

21 selling a variety of footwear, under the "Bearpaw" brand.  Defendant Thomas Romeo,

22 an individual, is the owner and Chief Operating Officer of Romeo & Juliette.  Id.

23     Deckers is the owner of U.S. Patent No. D599,999.  Dkt.  No. 280. The

24 application for the '999 Patent was filed on October 27, 2008.  *Id.* The '999 Patent was

25 issued on September 15, 2009.  *Id.*  Deckers is also the owner of Patent No. D616,189.

26 Id.

27     UGG® footwear identified by style name "Bailey Button" is an embodiment of

28 the '999 Patent. Deckers embodied its 189 Patent in its Bailey Button triplet boot. Dkt.

No. 280.

On April 16, 2015 Deckers filed its Complaint against Defendants Romeo & Juliette, Inc. and its owner, Thomas Romeo. Dkt. No. 1.

On April 6, 2018, the jury returned a verdict finding that Defendants willfully infringed the '999 and '189 Patents and that Thomas Romeo induced this infringement. Dkt. Nos. 246, 264. The jury also rejected Defendants' invalidity defense that the D616,189 patent was obvious. *Id*. Finally, the jury awarded $5,250,838 in damages to be paid by Defendants to Deckers. *Id.*

At trial, Deckers produced evidence of the massive success of its UGG® brand of footwear, pioneered by the UGG® "Classic" boots, which was featured on Oprah's Favorite Things® starting in 2000 and remained on the coveted list for many years. This success, and the popularity of the UGG® brand, only amplified with the introduction of the "Bailey Button" boot in 2009 and they "Bailey Button Triplet" boot in 2010.


*UGG® Classic Boot*


*UGG® Bailey Button Boot*


*UGG® Bailey Button Triplet Boot*

Tellingly, the timeline of events illustrating the relationship between Deckers and Defendants sings a similar tune. The parties first met in 2010, when Deckers filed its action against Defendants over infringement of Deckers' UGG® Classic boot design. This suit eventually settled in 2012. In 2014, after the initial success of the Bailey Button and Bailey Button Triplet boots, Deckers first discovered Defendants'

1    sale of boots bearing similar features.  Deckers owned and enjoyed federally-registered

2    design patents to both of these boot styles, with the Bailey Button boot embodying the

3    D599,999 Patent ("'999 Patent"), and the Bailey Button Triplet boot embodying the

4    D616,189 Patent ("'189 Patent").  As such, Deckers filed the present action against

5    Defendants in 2015.

6          The boots themselves demonstrate Romeo's clear intent to willfully copy

7    Deckers' famous Bailey Button UGG designs[1]:

  

*Deckers' D599,999 Patent*    *Defendants' "Elena" Boot*    *Defendants' "Abigail" Boot*

 

*Deckers' D616,189 Patent*    *Defendants' "Lauren" Boot*

[1] *See e.g., Afros S.P.A. v. Krauss-Maffei Corp.,* 671 F. Supp. 1402, 1436 (D. Del. 1987) ("The striking similarity between the '335 Patent and the UL mixing heads is the starting point for determining whether the defendant willfully infringed the '335 Patent"); *Adidas Am., Inc. v. Payless Shoesource, Inc.,* 546 F. Supp. 2d 1029, 1047 (D. Or. 2008) (trademark case)

1    In determining willfulness the jury also saw internal Romeo emails showing that

2    Defendants purchased Deckers' UGG® boots (Dkt. No. 285-3; Blakely Decl.. Ex. 8),

3    sought to "duplicate" their looks "at much tighter prices" (Dkt. No. 285-3.; Blakely

4    Decl Ex. 9), redesigned their boot models to "push the envelope just a bit more"

5    toward full-scale copying of Deckers' patented looks (Dkt. No. 285-3; Blakely Decl..

6    Exs. 9&10), and even internally referred to their Bearpaw boots using the names of the

7    UGG® models that Defendants had knocked off (Dkt. No. 285-3; Blakely Decl  Ex.

8    11) ("Just look at how many pairs of the Knit Tall/Cardy and Victorian/Bailey were

9    shipping right now.").

10    Romeo also continued to sell the infringing boots not only after it was sued by

11    Deckers in 2015, but up to, during, and after the trial in this matter.  Dkt. No. 257, pp

12    37&38.

13    On August 8, 2018 this Court entered its Findings of Fact and Conclusions of

14    Law.   Dkt. No. 280.  On August 10, 2018 this Court entered Judgment against

15    Defendants.   Dkt. No.  281.

16    **III.    THERE IS NO BASIS FOR A NEW TRIAL ON WILLFULNESS**

17    Defendants move for a new trial on the ground that Deckers's counsel

18    purportedly "proclaimed that Romeo did not seek advice from its counsel" during

19    closing argument in violation of 35 U.S.C. § 298.  Defendants' argument fails because

20    it falls hopelessly short of demonstrating grounds for a new trial.

21    Defendants face an exceedingly high burden in seeking a new trial based solely

22    on the content of Deckers' closing argument, as the Ninth Circuit has made clear that a

23    new trial should be ordered based on improper attorney argument "only in

24    'extraordinary cases.'"  *Hemmings v. Tidyman's Inc*., 285 F.3d 1174, 1193 (9th Cir.

25    2002).  For attorney conduct at trial to support a new trial, the conduct must

26    "sufficiently permeate an entire proceeding" and "provide conviction that the jury was

27    influenced by passion and prejudice in reaching its verdict."  *Anheuser-Busch, Inc. v.*

28    *Natural Beverage Distributors*, 69 F.3d 337, 346 (9th Cir. 1995).  In evaluating the

likelihood of prejudice resulting from questionable closing arguments, courts consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Hemmings*, 285 F.3d at 1193.  And the Ninth Circuit has held that "where 'offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial,' we are less inclined to find the statements pervaded the trial and thus prejudiced the jury." *Settlegoode v. Portland Pub. Schs*, 371 F.3d 503, 518 (9th Cir. 2004).[2]

Accordingly, the alleged objectionable statement does not warrant a new trial, did not permeate the entire proceeding, or provide conviction that the jury was influenced by passion and prejudice.  Indeed, there was nothing improper about any of the statements made by Deckers' counsel during closing.  Finally, not only was a standard curative instruction given, Defendants refused an additional curative instruction specifically addressing advice of counsel.  Simply put, Defendants' motion is baseless.

## A.    Defendants' Motion Is Unsupported and Should be Rejected on This Basis Alone

Rather than challenge the sufficiency of the evidence, which overwhelmingly supports the jury's willfulness verdict, Defendants premise their motion on statements allegedly said by Deckers' counsel in Deckers' closing argument.  Rule 59(c) contemplates that motions for a new trial will be supported by affidavits.  Local Rule 59-1.5, in turn, complements that rule.

---

[2] Moreover, the Ninth Circuit gives wide latitude in closing arguments: "The trial court has broad discretion in the control of closing arguments, and this court will not reverse a judgment because of statements made in the arguments of counsel unless they were so prejudicial that a failure to declare a mistrial was an abuse of discretion." *People of Territory of Guam v. Ignacio*, 852 F.2d 459, 462 (9th Cir. 1988).

1    Defendants have failed to comply with these requirements.  Defendants attach

2  no affidavit, declaration, or any portion of the record supporting what was purportedly

3  said during closing argument by Deckers' counsel and any contemporaneous objection

4  thereto.  Rather than working diligently to acquire a final trial transcript or seek

5  additional time from the Court to file their motion, Defendants have rushed back to the

6  Court with no record whatsoever.  Defendants' entire opposition is based on nothing

7  more than argument made by Defendants' counsel contained in the memorandum of

8  points and authorities.  They do not even attach an attorney declaration with sworn

9  statements about that attorney's recollection of the proceedings.

10    It is not Deckers' fault that Defendants failed to work diligently toward a

11  complete trial record.  Defendants' "motion fails on its face because any possible

12  request for a new trial based on an improper closing argument is not properly before

13  the court."  *Merrill v. Cty. of Madera,* 2007 U.S. Dist. LEXIS 90981, *24-29 (E.D.

14  Cal. Dec. 10, 2007).  This, alone, is grounds for denying Defendants' motion for a new

15  trial.

16    **B.    There Was Overwhelming Evidence Supporting the Jury's Verdict**

17          **That Defendants' Infringement Was Willful**

18    The Ninth Circuit has instructed courts to consider "the strength of the case" as a

19  factor in considering whether to order a new trial based on closing arguments.

20  *Anheuser-Busch, Inc.*, 69 F.3d at 346.  Willfulness required that Deckers prove by a

21  preponderance of the evidence that Defendants knew, or it was so obvious that

22  Defendants should have known, that their actions constituted infringement of a valid

23  and enforceable patent. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1934

24  (2016); see also *WesternGeco LLC v. Ion Geophysical Corp.*, 837 F.3d 1358, 1362

25  (Fed. Cir. 2016).  "Recklessness" is defined as "knowing or having reason to know of

26  facts which would lead a reasonable man to realize his actions are unreasonably risky."

27  *Halo*, 136 S. Ct. at 1933.

28

1    Deckers' willfulness case against Defendants was exceedingly strong.  The
2    Court instructed the jury that Deckers' burden on willfulness was to "persuade you that
3    it is more likely than not that after learning about Plaintiff's patents," Defendants acted
4    with "reckless disregard" for them.  Dkt. No. 257 at 41.  The Court further instructed
5    that to determine whether Defendants acted "reckless disregard," the jury should
6    consider "all of the facts surrounding the alleged infringement," including whether
7    Defendants "acted in a manner consistent with the standards of commerce for its
8    industry" and whether Defendants "intentionally copied a product of Plaintiff's that
9    was covered by a design patent."  *Id.*

10   Defendants raise no challenges to these jury instructions in their motion.  When
11   the evidence is analyzed in view of these instructions, it is clear the jury heard ample
12   evidence supporting a finding of willfulness:

13   •    A history of knocking-off UGG® styles beginning in or around 2009,
14   which eventually led to the filing of the present action;

15   •    The overall visual appearance of the infringing products, which are nearly
16   identical to that of the asserted patents and Deckers' commercial embodiments of the
17   asserted patents;

18   •    E-mails exchanged within Romeo & Juliette and between Romeo &
19   Juliette and its retailers and sales representatives, which strongly suggest an intent to
20   copy the design of UGG® footwear;

21   •    Lack of any evidence, including design sketches, that show that
22   Defendants themselves conceived of the designs of the accused products; and

23   •    Romeo's ongoing sale of infringing boots not only after Defendants were
24   sued in 2015, but up to, during, and after the trial in this matter.

25   As discussed more fully in Deckers' Motion for Fees (Dkt. No. 285), in
26   determining willfulness the jury also saw internal emails showing that Defendants
27   purchased Deckers' UGG® boots (Dkt. No. 285-3, Blakely Decl. Ex. 8), sought to
28   "duplicate" their looks "at much tighter prices" (Dkt. No. 285-3, Blakely Decl. Ex. 9),

redesigned their boot models to "push the envelope just a bit more" toward full-scale copying of Deckers' patented looks (Dkt. No. 285-3, Blakely Decl.. Exs. 9 & 10), and even internally referred to their Bearpaw boots using the names of the UGG® models that Defendants had knocked off (Dkt. No. 285-3, Blakely Decl Ex. 11) ("Just look at how many pairs of the Knit Tall/Cardy and Victorian/Bailey were shipping right now.") (emphasis added). These contemporaneous internal communications evidenced a clear intent by Defendants to deliberately knock-off Deckers famous/patented UGG Boot designs.

Romeo's continued sales of Accused Products following the filing of the present action *alone* supports a finding of willfulness[3]. *Apple Inc. v. Samsung Elecs. Co.,* 2017 U.S. Dist. LEXIS 97765, at *105 (N.D. Cal. June 22, 2017); *Zimmer Surgical, Inc. v. Stryker Corp.*, 2017 U.S. Dist. LEXIS 139274, at *5 (D. Del. Aug. 29, 2017) ("allegations of post-filing conduct can support a finding of willfulness."); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1296 (Fed. Cir. 2017).

The fact that Mr. Romeo was not a credible witness also weighs in favor of the jury's finding that Defendants acted willfully.[4] See e.g., *Barry v. Medtronic, Inc.*, 230 F. Supp. 3d 630, 650 (E.D. Tex. 2017)("This court does not judge credibility, which is squarely within the province of the jury. But this court would not criticize any inferences that jurors may have drawn regarding Medtronic's willfulness based on their assessment of Dr. Lenke's credibility.")

The reason why the jury returned a verdict of willfulness is because the evidence overwhelmingly supported such a finding—not because of a comment Deckers' counsel may have made in closing argument. This factor heavily favors denial of Defendants' motion.

---

[3] *See* Joint Pretrial Conference Order (Docket No. 175-1) at p. 3
[4] Mr. Romeo's inconsistent testimony is set forth in detail in Deckers' Motion for Attorneys' Fees. Dkt. Nos. 285 pp. 16-20.

**C.   *Defendants*, Not Deckers, Opened the Door on the Advice-of-Counsel Issue**

Defendants' motion is rests solely on comments allegedly made during closing argument and is based on a flawed understanding of 35 U.S.C. § 298.  Tellingly, although Defendants contend that section 298 makes it "statutorily forbidden" to argue that "Romeo did not seek advice of counsel," Defendants do not cite a single case where a court found that section 298 required setting aside a jury verdict.  As Deckers explains below, section 298 does not provide a total and unassailable bar against advice-of-counsel evidence, but even if it did, Defendants opened the door

Section § 298 does not provide a total and unassailable bar against advice-of-counsel evidence.  Rather, it "simply addressed the fallout from the Federal Circuit's opinion in *Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F. 2d 1380 (1983), which had imposed an "affirmative duty" to obtain advice of counsel prior to initiating any possible infringing activity, *id*., at 1389-1390. *See, e.g.,* H. R. Rep. No. 112-98, pt. 1, p. 53 (2011)."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 136 S. Ct. 1923, 1935 (2016). Under *Underwater Devices*, all a plaintiff had to do to establish willfulness was point to the defendant's failure to obtain advice of counsel, which gave rise to a cottage industry for so-called "opinion letters."  Section 298 remedies this by providing that "[t]he failure of an infringer to obtain the advice of counsel" or "the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed." 35 U.S.C. § 298.

Critically, § 298 only provides that failure to obtain advice of counsel cannot be used to prove willfulness or induced infringement.  As discussed in Section III.B, above, Deckers did not "prove" willfulness by arguing that Defendants failed to seek advice of counsel—it proved willfulness through Defendants' internal documents, which revealed a scheme to make boots featuring Deckers' patented designs while undercutting Deckers on cost.

The advice of counsel issue only came up after Defendants opened the door to it

by suggesting that Defendants had, in fact, received advice of counsel.  On direct examination, Mr. Romeo testified that, after learning of Deckers' 2015 lawsuit, he sat down with Mr. Pierce, analyzed the patents, and determined that the accused boots didn't infringe.  The implication here is that Defendants continued to sell infringing products only after they had concluded that they had a good-faith basis for doing so.  But this is an application of the law to the facts—it requires a legal understanding of what patents cover and how they are infringed, and it strongly implies that Mr. Romeo or Mr. Pierce—who are not lawyers—received some sort of guidance from a lawyer.  Numerous courts have noted that a defendant cannot imply that he consulted with legal counsel or had some legal support for his action without "opening the door" on this issue.  *See Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2014 WL 4976596, *2 (W.D. Wis. Oct. 3, 2014), amended, 2014 WL 5023098 (W.D. Wis. Oct. 8, 2014) ("Plaintiffs do not object to defendants' motion in principle but argue that the statutory bar should not be interpreted so narrowly as to preclude them from rebutting any evidence defendants seek to introduce that implies that defendants consulted with counsel or had some legal basis for believing the patents to be invalid . . . Generally speaking, I agree with plaintiffs that ***the protection granted by 35 U.S.C. § 298 dissolves in the event defendants "open the door" by attempting to refute a claim of willful infringement by implying that they relied on the advice of counsel***.") (emphasis added); *Hologic, Inc. v. Minerva Surgical, Inc.*, 2018 WL 3348998, *2 (D. Del. July 9, 2018) ("The protection granted by 35 U.S.C. § 298 dissolves in the event defendants "open the door" by attempting to refute a claim of willful infringement by implying that they relied on the advice of counsel."); *Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*, 2017 U.S. Dist. LEXIS 215162, *3 (D. Colo. May 2, 2017)  ("Defendant may through various means 'open the door' by implying that they relied on advice of counsel when they did not.").

Defendants are also flat wrong in contending that "the Court granted a motion *in limine* to exclude evidence and argument about whether Romeo sought the advice of

1  counsel before selling the accused boots."  Dkt. No. 293 at 4.  In recognition of the fact

2  that any prohibition on the issue would have to apply to both parties (i.e., that

3  Defendants could "open the door" on the issue), the Court **denied** Defendants' motion,

4  stating that the issue "can be revisited at trial if the situation arises."  Dkt. No. 213 at 9.

5         By strongly implying that Defendants had sought advice of counsel and reached

6  a good-faith belief they did not infringe, Defendants opened the door on the "advice of

7  counsel" issue.  It was entirely proper for Deckers' counsel to identify clear issues with

8  Defendants' position in Deckers' closing argument.  As Deckers' counsel warned in its

9  opposition to Romeo's *motion in limine* (Dkt. No. 195 at 8) and prior to closing

10  argument, if Defendants attempted to imply that they somehow received advice of

11  counsel and that therefore did not willfully infringe, Deckers would be required to

12  respond.  Defendants not only opened the door when they tried to play this game

13  during closing argument with the jury – they pushed Deckers into a corner.  By having

14  Mr. Romeo strenuously contend that he had reached a legal conclusion on

15  infringement, Defendants put Deckers in a position where it had to respond.  There

16  was nothing improper about Deckers' rejoinder during rebuttal to Defendants' ruse.

17         Furthermore, 35 U.S.C. § 298 only applies to defendants who failed to obtain the

18  advice of counsel, not to defendants like Mr. Romeo, who **sought** such advice. *Johns*

19  *Hopkins Univ. v. Alcon Labs., Inc*., 2018 U.S. Dist. LEXIS 147691, *56 (Dist. Del.

20  2018)   Deckers never asserted that Defendants failed to obtain advice of counsel.

21  Rather, Deckers' counsel, at most, commented during rebuttal that Defendants were

22  attempting to assert an advice of counsel defense through Mr. Romeo and Mr. Pierce,

23  and that this was improper.

24         The disputed statement made by Deckers' counsel falls well within the bounds

25  of fair advocacy and was based on facts and evidence.[5]  Moreover, the closing

26  _____

27  [5] The Ninth Circuit has held that "even when statements go beyond reasonable
   inferences made from the evidence," they are permissible. *See United States v.*

28  *Feldman*, 853 F.2d 648, 665 (9th Cir. 1988), cert. denied, 489 U.S. 1030 (1989)

arguments to which Defendants object come nowhere close to permeating the entire proceeding such that the jury was necessarily prejudiced. Like the Ninth Circuit's decision in *Kehr v. Smith Barney, Harris Upham & Co., Inc*., 736 F.2d 1283, 1286 (9th Cir. 1984), the remarks in this case were in closing and were "isolated, rather than persistent." *Id.* at 1286 (stating that "the offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial").

### D.      This Court Gave Curative Instructions

Defendants, who opened the door on the subject in the first place, were also in no way unfairly prejudiced by any statements made by Deckers' counsel during closing.  A district court may cure the effect of misstatements "by giving appropriate curative instructions to the jury." *United States v. Marsh*, 894 F.2d 1035, 1040 (9th Cir. 1989).  Moreover, issuing a cautionary limiting instruction is preferred to declaring a mistrial when an attorney makes an inappropriate or prejudicial remark unless the remark is so prejudicial that a cautionary instruction is unlikely to cure it. *Wyatt v. Horkley Self-Serve, Inc*., 325 Fed. Appx. 488, 491 (9th Cir. 2009).

During trial, this Court gave the following instructions, upon which both parties agreed:

> Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence.  Dkt.  No. 257, pg. 8.

> If a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact. The lawyer's questions and statements are not evidence. *Id.* at pg. 13.

The Ninth Circuit has found that a judge's instruction to a jury that the statements of counsel are not evidence can cure improper statements. *Barzelis v. Kulikowski*, 418 F.2d 869, 871 (9th Cir. 1969); 11 Wright & Miller: FEDERAL

PRAC. & PROC. § 2809 & n.5 (2007); *see also, Merrill v. Cty. of Madera*, 2007 U.S. Dist. LEXIS 90981, at \*24-29 (E.D. Cal. Dec. 10, 2007).  These instructions given by the Court, which are like Ninth Circuit Model Instruction 1.10, ensured that Defendants suffered no prejudice, and Defendants have presented no reason why anyone would believe they were disregarded by the jury.  *Glover v. BIC Corp*., 987 F.2d 1410, 1421 (9th Cir. 1993) (affirming the denial of a motion for mistrial where the challenged remarks were made during the arguments phase of the trial and the jury was instructed that the arguments were not evidence it could consider); *Coles v. Eagle*, 2011 U.S. Dist. LEXIS 71634 \*19-20 (Dist. Hawaii 2011); *Multimedia Patent Trust v. Apple Inc*., 2013 U.S. Dist. LEXIS 6694 \*\*8-9 (S.D. Cal. 2013) (In addition, the Court instructed the jurors that arguments and statements by lawyers are not evidence.)

### E.    Defendants Failed to Timely Object

A party should object to alleged instances of attorney misconduct before the jury deliberates to allow the district court "to examine the alleged prejudice and to admonish . . . counsel or issue a curative instruction, if warranted." *Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986); *see also, Merrill v. Cty. of Madera,* 2007 U.S. Dist. LEXIS 90981, at \*24-29 (E.D. Cal. Dec. 10, 2007). Without opposing counsel's contemporaneous objection, courts will grant a new trial only if the attorney misconduct rises to the level of "plain error." *Settlegoode*, 371 F. 3d at 517.

Defendants do not allege, much less establish, in their motion that they timely objected to the allegedly improper attorney argument during trial.  As the Ninth Circuit has instructed, belated objections are improper for the simple reason that "allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error."  *Id.*  The failure to make a contemporaneous objection to the purportedly improper remarks made by opposing counsel during closing argument constitutes a waiver of error. *United States v. Sehnal*, 930 F.2d 1420, 1425 (9th Cir. 1991); *see also, United States v. Tiller*, 302 F.3d 98, 105 (3rd Cir. 2002)

1   (citing *United States v. Young*, 470 U.S. 1, 15 (1985)); *Multimedia Patent Trust v.*

2   *Apple Inc*., 2013 U.S. Dist. LEXIS 6694, *6-7 (S.D. Cal. 2013).

    **F.**    **Defendants Invited Error When They Refused the Court's Offer to**

        **Give Another Curative Instruction**

5        Despite the belatedness of Defendants' objection, this Court generously offered

6   to provide an additional instruction.  Deckers did not object to the instruction.

7   However, Defendants, playing yet more games with this Court, declined to have the

8   instruction given.  Defendants now disingenuously argue that the court erred in failing

9   to issue a further curative instruction.  However, the doctrine of invited error precludes

10  Defendants from now challenging that failure. "The doctrine of invited error prevents a

11  defendant from complaining of an error that was his own fault." *United States v.*

12  *Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992); *see also, Sovak v. Chugai*

13  *Pharmaceutical Co*., 280 F.3d 1266, 1270 (9th Cir. 2002) ("'[O]ne may not complain

14  on review of errors below for which he is responsible.' [Citation.]").  Even if the court

15  had erred (and it did not) by failing to issue a curative instruction, Plaintiffs invited

16  that error when they declined the court's specific offer to submit a curative instruction

17  to the jury.  *See e.g., Collender v. City of Brea*, 2016 U.S. Dist. LEXIS 188758, at *14-

18  16 (C.D. Cal. June 14, 2016); *Merrill v. Cty. of Madera*, 2007 U.S. Dist. LEXIS

19  90981, at *24-29 (E.D. Cal. Dec. 10, 2007) (Because the court agreed to give a

20  curative instruction concerning the improper argument and Plaintiffs never followed

21  the court's order to submit a curative instruction, the court finds Plaintiffs have waived

22  this contention.)

    **G.**    **Plaintiff's Counsel's Purported Statement Was Isolated**

24       "To receive a new trial because of attorney misconduct in the civil context, [the

25  moving party] must meet a high standard: the moving party must demonstrate adverse

26  counsel's misconduct substantially interfered with the moving party's interest." *SEC v.*

27  *Jasper*, 678 F.3d 1116, 1129 (9th Cir. 2012). A new trial based on alleged attorney

28  misconduct should only be granted "where the flavor of misconduct . . . sufficiently

permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Navarro v. DHL Global Forwarding*, 2017 U.S. Dist. LEXIS 164825 (C.D. Cal. 2017) (citing *Settlegoode*, 371 F.3d at 516-17).

In no way was does this isolated statement by counsel constitute misconduct that "sufficiently permeate[d] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270 (9th Cir. 2000). Furthermore, even if the unsupported characterization of counsel's conduct of "raising his voice and arguing strenuously" was accurate, it was not improper. "A trial lawyer's job, after all, is to present his client's case in the most sympathetic light consistent with the evidence." *Settlegoode*, 371 F.3d at 518; *see also, Multimedia Patent Trust*, 2013 U.S. Dist. LEXIS 6694 at *9-10; *United States v. Feldman*, 853 F.2d at 665. .

## IV.    CONCLUSION

For the foregoing reasons, Deckers respectfully requests that the Court deny Defendants' Motion.

DATED:  September 14, 2018          BLAKELY LAW GROUP

By:    */s/ Brent Blakely*
Brent H. Blakely
*Attorneys for Plaintiff*
*Deckers Outdoor Corporation*